# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-00918-SCT

*RANDALL PRINCE*

*v.*

*LOUISVILLE MUNICIPAL SCHOOL DISTRICT, DAVID CHAMBLISS, BOBBY BOWMAN, AND HOMESTEAD INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/22/97 |
| TRIAL JUDGE: | HON. C. E. MORGAN, III |
| COURT FROM WHICH APPEALED: | WINSTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER D. HEMPHILL |
| ATTORNEYS FOR APPELLEES: | DAVID T. WILSON |
| | PAUL M. NEVILLE |
| | MARK R. SMITH |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART; REMANDED IN PART - 04/08/1999 |
| MOTION FOR REHEARING FILED: | 4/22/99 |
| MANDATE ISSUED: | 6/10/99 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This case arose out of a suit filed by Richard Prince on April 11, 1994, against the Louisville Municipal School District (the District), David Chambiss and Bobby Bowman for injures suffered while Prince was a member of the Nanih Waiya High School football team. Prince alleged in his complaint that while practicing as a member of the Nanih Waiya High School football team, he suffered a heatstroke due to the negligence of football coaches Bowman and Chambliss.

¶2. On October 26, 1995, the District amended its answer to an interrogatory and listed as its insurer, Homestead Insurance Company (Homestead). On April 12, 1996, Prince moved to join Homestead as a

defendant.

¶3. On December 20, 1996, the trial court dismissed Prince's claim on a motion for summary judgment by Bowman, Chambliss and the District. The trial court found the defendants were protected by the defense of qualified immunity because the actions of Bowman and Chambliss were discretionary and performed by them in their official capacities. On May 22, 1996, the trial court dismissed Prince's claim against Homestead for failure to state a claim on which relief could be granted. Prince timely appealed listing two errors:

> **I. WHETHER THE CLAIM AGAINST THE LOUISVILLE MUNICIPAL SCHOOL DISTRICT, DAVID CHAMBLISS AND BOBBY BOWMAN SHOULD HAVE BEEN DISMISSED BASED ON THE DOCTRINE OF QUALIFIED IMMUNITY**

> **II. WHETHER THE CLAIMS AGAINST HOMESTEAD INSURANCE COMPANY SHOULD HAVE BEEN DISMISSED FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF COULD BE GRANTED**

¶4. Finding error in the decision below, we affirm in part and reverse and remand in part.

## FACTS OF THE CASE

¶5. Prince alleged he suffered a heat stroke during football practice at Nanih Waiya High School on August 29, 1991, due to the negligence of football coaches Bowman and Chambliss. Prince further alleged Bowman and Chambliss negligently failed to keep a proper monitor on his health and condition, failed to provide necessary liquids and failed to provide necessary medical care in a timely manner. Prince required hospitalization for his injury and claims to have suffered permanent injures.

¶6. At the time of Prince's injury, the school district was insured by a policy titled "Liability Catastrophe Plan with Lifetime Settlement Option"[1] issued by Homestead. Prince's mother, Betty Prince, was contacted by the designated administrator of the policy, Doug Ruedlinger, Inc., by letter dated February 26, 1992. This letter stated the company had proof Prince's medical expenses had exceeded the $25,000 deductible and suggested Prince contact an attorney to discuss Prince's benefits under the policy.

¶7. Eighteen months after sending the letter informing Prince he had met the deductible of the policy, Homestead advised Prince he had not met the deductible. In a letter dated November 15, 1993, Homestead stated it had received information Prince's medical expenses due to his heatstroke had not exceeded the $25,000 deductible and because no catastrophic injury had occurred as defined in the policy, Homestead denied the claim.

¶8. Under the terms of the policy, catastrophic injury is defined below.

> "Catastrophic injury" and "student catastrophically injured" are defined to include any bodily injury, including death, the liability for which is covered by this policy, which produces medical expenses in excess of $25,000 within one year of the date of injury. For the sole purpose of determining whether such expenses meet or exceed this definition, such expenses shall be deemed to have been incurred regardless of whether they are payable pursuant to Section III.

¶9. Homestead, in its November 15, 1993, letter, stated because Prince's stay in the hospital was extended

due to a hospital acquired staph infection not due to his participation in interscholastic athletics or activities, any additional medical costs due to the infection would be factored out and would thus reduce the medical cost below the $25,000 deductible.

¶10. On April 11, 1994, Prince filed suit against Bowman, Chambliss and the District alleging their negligence was the cause of Prince's injuries. In July of 1996, Prince filed an amended complaint which included claims against Homestead for breach of insurance contract and bad faith refusal to offer the settlement option as required by their policy.

¶11. Bowman, Chambliss and the District moved to dismiss Prince's claim on March 14, 1995. These defendants claimed (1) Prince's complaint failed to state a claim on which relief could be granted; (2) the defendants were protected by sovereign immunity or qualified sovereign immunity; and (3) based on the pleadings, there was no material issue in dispute and the defendants were entitled to summary judgment. Homestead joined the other defendants' motion on December 11, 1996, arguing any liability on Homestead's part was derivative of the liability of the other defendants.

¶12. On December 20, 1996, the trial court dismissed Prince's claim against Bowman, Chambliss and the District because it found these defendants were protected by immunity. The trial court took Homestead's motion under advisement, and on June 25, 1997, the court entered an order dismissing Prince's claims against Homestead. Prince timely appealed.

### DISCUSSION OF LAW

### I. WHETHER THE CLAIM AGAINST THE LOUISVILLE MUNICIPAL SCHOOL DISTRICT, DAVID CHAMBLISS AND BOBBY BOWMAN SHOULD HAVE BEEN DISMISSED BASED ON THE DOCTRINE OF QUALIFIED IMMUNITY

¶13. We have stated:

> In 1982, this Court abolished judicially created sovereign immunity in *Pruett v. City of Rosedale*, 421 So. 2d 1046 (Miss. 1982), holding that it was the legislature's duty to determine the extent of sovereign immunity. The legislature responded by enacting Mississippi Code Annotated § 11-46-1 et seq., which was a comprehensive torts claim act providing a limited waiver of sovereign immunity. *Hord v. City of Yazoo City*, 702 So. 2d 121, 123 (Miss. 1997). However, Miss. Code Ann. § 11-46-6 stated that the Act was not yet effective and that the common law that existed before *Pruett* would govern until the act became effective. In 1992, in *Presley v. Mississippi State Highway Commission*, 608 So. 2d 1288 (Miss. 1992), we held that Miss. Code Ann. § 11-46-6 was unconstitutional because it sought to revive law by reference. Subsequently, we held that *Presley* was to be applied prospectively only. *Robinson v. Stewart*, 655 So. 2d 866 (Miss. 1995).

*Jackson v. Daley*, 1998 WL 800123, *8, No. 96-CA-00642-SCT, ¶¶34-35 (Miss. Nov. 19, 1998). The case *sub judice* is a post-*Pruett*, pre-*Presley* cause of action because it arose August 29, 1991. Therefore, according to *Robinson*, we must follow § 11-46-6 which directs us to apply pre-*Pruett* common law. *Jackson*, 1998 WL 800123 at *8.

¶14. For the District, the doctrine of sovereign immunity mandates a finding of non-liability. See *Gressett v. Newton Separate Mun. School Dist.*, 697 So. 2d 444, 445-46 (Miss. 1997) (finding school district was

protected by sovereign immunity for incident occurring in August 1993).

¶15. For Bowman and Chambliss individually, "[p]re-*Pruett* common law mandates a finding of whether the act involved is a discretionary function or a ministerial function . . . . An official will be immune when the act being performed is discretionary." *Id.* (citing *Coplin v. Francis*, 631 So. 2d 752, 753 (Miss. 1994)) (internal citations omitted).

¶16. In *Quinn v. Mississippi State University*, 720 So. 2d 843 (Miss. 1998), we were faced with a factual situation comparable to the present case. Bobby Quinn was injured June 22, 1992, while participating in a summer baseball camp at Mississippi State University. An instructor at the camp hit Quinn with a baseball bat during a hitting demonstration. Quinn lost one tooth and suffered permanent damages to four other teeth. *Quinn*, 720 So. 2d at 844-45. Quinn sued the university President, the head baseball coach and an assistant baseball coach, who was also director of the camp. *Id.*

¶17. We affirmed the trial court's granting of summary judgment for the three defendants stating "limited immunity applies to actions by a state agency, an arm of the state or local government and the members thereof, who either for remuneration or as a public service, engage in discretionary functions for which the agency or governmental arm was formed." *Id.* at 849. (citations omitted). The three defendants in *Quinn* were not present at the time of the injury, but they were "engaged in hiring employees, and coordinating, and supervising the baseball program either directly or indirectly. The motion for summary judgment was correctly granted as [the defendants] were engaged in a discretionary activity that served a public interest." *Id.*

¶18. In a case even more factually akin to the case at bar, *Lennon v. Peterson*, 624 So. 2d 171 (Ala. 1993), the Alabama Supreme Court addressed the effect of qualified immunity on a negligence action brought against a soccer coach and university trainer by an injured soccer player. *Lennon*, 624 So. 2d at 171. Patrick Lennon alleged his coach was negligent in not recognizing his injuries and providing the proper treatment. *Id.* at 173. Lennon experienced sharp pain in his hip and groin during soccer practice and received treatment from the University of Alabama at Huntsville athletic trainer, Debbie Lee. *Id.* Lee diagnosed his injury as "groin strain" and treated him with ice and electricity. *Id.* Lennon's injury persisted and he sought treatment from a physician after the season ended. Lennon's physician diagnosed his condition as avascular necrosis which had worsened because of the treatment he received during the course of the soccer season from Lee and under the direction of Peterson, his soccer coach. *Id.* Lennon required surgery to help his problem, but was forced to avoid any activities that could cause a jarring of his hip bones. He also faced the prospect of premature arthritis and a hip joint replacement in the future. *Id.*

¶19. In addressing the negligence claim against Lennon's coach, the Alabama Supreme Court stated:

> Petersen's actions clearly fall into the category of discretionary acts. Petersen had to rely on his own judgment and discretion in making difficult decisions while performing his job. He had to determine what drills his players needed and how long the drills should last. He also had to evaluate his players to determine if they were playing to the best of their ability. He had to make difficult decisions in determining whether a player was injured and should report to the trainer or whether the player was merely faking an injury to avoid practice. He also had to be aware that some players would hide their injuries so that they would be allowed to practice or to play in a game. He was responsible for motivating the players and evaluating their performance. Petersen was acting within his authority in using his discretion in such matters, and he is entitled to discretionary function immunity.

*Id.* at 174

¶20. Like the defendants in *Quinn*, high school football coaches Bowman and Chambliss were responsible for coordinating and supervising the football program at Nanih Waiya High School. Bowman and Chambliss also faced the same daily coaching decisions as did Coach Peterson in *Lennon*. The Alabama Supreme Court's description of the nature of a coach's job is important to consider. In a typical practice there are strains, sprains and complaints from a coach's players. A coach must consider the good order and discipline of the team when confronted with situational complaints by the players. A coach must use his discretion in judging whether or not an individual player is injured and then, whether the player should report to a trainer or seek other medical aid. There was no evidence presented in the lower court to show that either Bowman or Chambliss did anything beyond exercising ordinary discretion in supervising the Nanih Waiya football practice on August 29 ,1991. Prince produced no facts that evidenced any disregard for his health or any other outrageous action on the part of Bowman or Chambliss that might have warranted a departure from our previous holdings. The trial court correctly found the coaches were protected by qualified immunity.

¶21. For the reasons discussed above, this assignment is without merit.

## III. WHETHER THE CLAIMS AGAINST HOMESTEAD INSURANCE COMPANY SHOULD HAVE BEEN DISMISSED FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF COULD BE GRANTED

¶22. On this issue we reverse and remand for further proceedings.

¶23. Although we recently provided for joinder of insurance companies in another context, *see State Farm Mutual Automobile Insurance Co. v. Eakins*, 1998 WL 852920, No. 96-CT-00034-SCT (Miss. Dec. 10, 1998), we have not yet addressed specifically whether a medical payment (med-pay) claimant like Prince is an intended third party beneficiary under the insurance contract with the accompanying right to proceed directly against the insurer for refusing to pay medical benefits due under the contract.

¶24. Allowing direct actions against insurance companies, both alone and with other defendants, is not without precedent in the med-pay context. "Medical payment provisions usually provide that the benefits are to be paid to the injured person regardless of fault." Under med-pay provisions the insurer is considered directly liable to the third party claimant; payment is not dependant on negligence. Typically these med-pay provisions will pay for reasonable medical expenses, surgical and nursing expenses and prosthetic or aid devices. William C. Walter & Michael V. Corey, *The Circumvention of Mississippi's Prohibition of Direct Actions*, 66 Miss. L.J. 493, 503-05 (Spring 1997). In the med-pay context other courts have found that med-pay claimants are intended third party beneficiaries.[2] We find these persuasive.

¶25. Homestead's settlement option is a typical med-pay type provision. The settlement option pays directly to the injured claimant regardless of a showing of fault. For this reason our decision in Part I finding that Bowman, Chambliss and the District are immune does not relieve Homestead of its obligation to pay under the terms of its policy. In order to recover, Prince must simply show that he meets the definition of a "student catastrophically injured" under the terms of the policy, which he should get an opportunity to do on remand.

¶26. We also find the no action clause in Homestead's policy is unenforceable in this context.

¶27. Homestead's policy provides:

F. Conditions

8. No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until the amount of the Covered Person's obligation to pay shall have been finally determined either by judgment against the Covered Person after actual trials or by written agreement of the Covered Person, the claimant and the Company.

\* \* \*

No person or organization shall have any right under this policy to join the Company as a co-defendant in any action against the Covered Person to determine the Covered Person's liability. . . .

¶28. Homestead argues this no action clause prevents Prince from filing suit to collect anything under the policy. According to Homestead because Prince has sued to enforce what he considers a valid claim to medical expenses, Prince has lost his right to collect under the settlement provisions of the policy. Homestead acknowledges that if Prince were a "student catastrophically injured" under the terms of the policy, he would be able to collect under one of the settlement options. Homestead, however, claims Prince does not meet the definitional requirements of a "student catastrophically injured" and refuses to pay. Prince is left in an impossible position.

¶29. The District paid premiums to Homestead in exchange for insurance coverage designed, in Homestead's words, to "protect the Insureds from liability claims." Prince alleges he suffered injuries of the type contemplated and covered by the policy. From the outset Prince followed the requirements of the settlement option in the policy and sought to collect his medical expenses without suing the District or the coaches. Although Homestead argues Prince violated the no action term of the policy, he did so only when Homestead reversed its initial decision to pay for his injuries and denied his claim. Homestead now seeks to prevent Prince from challenging that decision.

¶30. Homestead states in its letter to Prince that because his hospital stay was lengthened due to a hospital acquired staph infection, his total medical costs related to the covered injury would be reduced. However, it is important to point out any costs incurred as a result of Prince's covered injury would be chargeable to Homestead under the policy. Prince should be able to include all costs resulting from his initial injury for purposes of calculating the amount required to be considered a "student catastrophically injured" *See **Huff v. Boyd***, 242 So. 2d 698, 701(Miss. 1971) (discussing proximate and intervening causes).

¶31. On remand, Prince should be allowed to challenge Homestead's denial of his claim. To hold otherwise would create a windfall for Homestead by allowing the company to collect premiums from the District and then not pay claims on the very type of injuries the District sought to insure against. If the purpose of the policy is as Homestead claims "to protect the Insureds from liability" by providing, without a showing of fault, payments to any student who meets the definition of a "student catastrophically injured," Prince must be given an opportunity to show he meets that definition.

## CONCLUSION

¶32. We affirm the trial court's granting of summary judgment in favor of the District because the District

was protected by sovereign immunity. Following our prior decision in *Quinn v. Mississippi State University* and the approach of the Alabama Supreme Court in *Lennon v. Peterson*, we affirm the trial court's granting of summary judgment to Bowman and Chambliss based on the protection of qualified immunity.

¶33. We reverse the trial court's summary judgment for Homestead, and we remand this case for further proceedings consistent with this opinion. On remand Prince should be allowed to present evidence he meets the definition of a "student catastrophically" injured under the terms of the policy.

¶34. **AFFIRMED IN PART; REVERSED IN PART; REMANDED IN PART.**

**PRATHER, C.J., SMITH AND MILLS, JJ., CONCUR. SULLIVAN, P.J., CONCURS IN PART. BANKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN AND PITTMAN, P.JJ., AND McRAE, J. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND BANKS, J. COBB, J., NOT PARTICIPATING.**

### BANKS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶35. Because the majority embarks upon yet another unwarranted extension of the doctrine of public official immunity, I dissent from so much of today's decision as would envelop soccer or other coaches in the protection of qualified public official immunity from liability based upon their actions in directly supervising children.

¶36. Qualified immunity goes to public officials for policy decision-making. It is not intended to insulate tortfeasors simply because they work for the government, whether they are truck drivers, physicians or football coaches.

¶37. In *Womble v. Singing River Hosp.,* 618 So. 2d 1252 (Miss. 1993), this Court removed a then relatively recently discovered blanket immunity for "discretionary" medical decisions.[3] We concluded that medical treatment decisions, however discretionary, were not governmental policy decisions and, therefore, no immunity attached. *Womble* put medical personnel, back on an even footing with all other governmental personnel, where they had always been and where they belonged. *Womble* at 1265. Today's decision elevates athletic coaches to the same perch from which we removed medical personnel.

¶38. Administrators, commissioners, etc., are immune for policy-making decisions, such as how much money to allocate to particular objectives.. Neither they nor other government employees should be immune for breaches of the duty of reasonable care when dealing directly with individuals to whom such a duty is owed. The Alabama Supreme Court construing Alabama law reaches a different result, *Lennon v. Peterson*, 624 So. 2d 171 (Ala. 1993), but that simply is not our law.

¶39. The majority's reliance upon *Quinn v. Mississippi State University,* 720 So. 2d 843 (Miss. 1998), is also misplaced. There we held that the president of the university, the university head baseball coach and the assistant head baseball coach who also directed the baseball camp enjoyed qualified immunity from

liability with respect to an injury to a participant in the baseball camp. Neither of these defendants, however, was shown to have had or exercised direct supervisory responsibility for the particular activities out of which the injury arose. These individuals would be counterparts to the hospital administrators and perhaps, chiefs of various medical disciplines as opposed to treating physicians as in the case of *Womble*. No one contends that administrative decisions fall outside the ambit of qualified immunity. The decisions here involved were not administrative.

¶40. In my view the football coach and trainer in the instant case owed a duty of reasonable care to the player, the breach of which should incur liability from which there is no immunity. That is not to say that they were, in fact, negligent in breach of their duty. Perhaps what they did was fully in keeping with reasonable care under the circumstances. All I say is that there should be no immunity.

¶41. While I concur in the judgment that this case should be remanded for consideration of the insurance issue, it is my view that the Court errs in concluding that the individuals here involved enjoyed qualified immunity in these circumstances.

**SULLIVAN AND PITTMAN, P.JJ., AND McRAE, J., JOIN THIS OPINION.**

**McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶42. I concur with the majority's decision to reverse summary judgment previously granted Homestead Insurance Company, but I dissent as to the affirmation of summary judgment for the Louisville Municipal School District and for coaches Chambliss and Bowman. *Churchill v. Pearl River Basin Dev. Dist.*, 619 So. 2d 900 (Miss. 1993), is applicable here. While the majority fails to dutifully apply it, *Churchill* provides the opportunity to recover for tort claims up to the extent of liability insurance coverage. In the instant case, the school district and the coaches thereof were covered by a liability insurance policy, the limit of which was $1,000,000.00. Hence, under *Churchill*, it is quite obvious that the school district and its coaches, i.e., agents, are open to suit for the damages Prince seeks from them.

¶43. Additionally, the coaches were acting in their ministerial capacities, not with discretion. Qualified immunity is not warranted. In *Womble v. Singing River Hosp.*, 618 So. 2d 1252 (Miss. 1993), we stated that qualified immunity serves to protect the discretion of public officials so that such officials may make decisions and formulate policies for the public without the deterring concern of lawsuits. *See id.* at 1263; *see also Sullivan v. Sumrall*, 618 So. 2d 1274, 1276 (Miss. 1993). Further, *Womble* holds that "common law qualified public official immunity . . . . will not be extended to decisions that involve only individual medical treatment." *Id.* at 1265. Coaches are general practitioners in the same spirit as are physicians. Coaches Chambliss and Bowman maintained duties to manage their players. Randall Prince suffered harm because his coaches failed to perform their duties such that he suffered heatstroke, and because those same coaches failed to take proper actions afterwards. As coaches directly responsible for serving the general needs of Prince while he is under their power as a football player, the coaches should have more closely monitored Prince's condition. When it became possible that Prince was a candidate for heatstroke, the coaches should have given him rest out of the sun, provided him additional liquids, or simply excused him from practice. There are no means by which to grant qualified immunity. The instant case deals with an extracurricular activity internal to the school, not a promotion of government policy and public good. Accordingly, I dissent to affirming summary judgment for the coaches and the school district.

**SULLIVAN, P.J., AND BANKS, J., JOIN THIS OPINION.**

1. This medical payment policy was purchased by the District to cover policy defined catastrophic injuries to students participating in school-sponsored activities or athletics. No showing of fault is required to collect under the policy. Instead under the terms of the policy, injured students are required to show they have suffered medical expenses totaling at least $25,000 in order collect under the policy's settlement option.

2. *See, e.g.*, **Donald v. Liberty Mut. Ins. Co.**, 18 F.3d 474, 481 (7th Cir. 1994) (holding med-pay provisions in insurance policies are separate intended third party beneficiary contracts); **United States v. Nationwide Mut. Ins. Co.**, 499 F.2d 1355, 1358 (9th Cir. 1974) (holding under Washington law, third-party beneficiaries in med-pay context may enforce contracts intended to benefit them); **United States v. United Servs. Auto. Ass'n**, No. 90-1425-K, 1991 WL 152793 (D. Kan. July 2, 1991) (holding med-pay provision creates rights in third party); **Maxwell v. Southern Am. Fire Ins. Co.**, 235 So. 2d 768, 770 (Fla. Dist. Ct. App. 1970) (holding med-pay provision creates intended third party beneficiary who is entitled to bring direct action against insurer); **Hunt v. First Ins. Co. of Hawaii, Ltd.**, 922 P.2d 976, 981 (Haw. Ct. App. 1996) (holding in med-pay context general prohibition against direct action by injured party against tort-feasor's liability insurer did not apply and suit was ripe despite not obtaining judgment against tortfeasor first); **Beschnett v. Farmers Equitable Ins. Co.**, 146 N.W.2d 861, 865 (Minn. 1966) (holding in certain contexts plaintiff is not barred from bringing action to recover medical payments from insured's liability insurer); **Desmond v. American Ins. Co.**, 786 S.W.2d 144, 146-47 (Mo. Ct. App. 1990) (finding injured theater patron third party beneficiary under theater's liability policy and entitled to bring direct action against insurer for medical expenses incurred due to accident); **Roach v. Atlas Life Ins. Co.**, 769 P.2d 158, 161 (Okla. 1989) (stating med-pay provisions create intended third party beneficiaries to life insurance contracts); **Navy v. Lumbermens Mut. Cas. Co.**, 219 A.2d 396, 398 (R.I. 1966) (holding med-pay clause in insurance policy creates intended third party beneficiary in med-pay claimant). These cases are cited in Walter & Corey, *supra* at 504 n.49.

3. This temporary extension of immunity found its way into our law in **Marshall v. Chawla,** 520 So. 2d 1374 (Miss. 1988), which we overruled in **Womble**, 618 So. 2d at 1263.