# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01669-COA

**CHRISTOPHER SHANE STRICKLAND, SR., ON BEHALF OF AND AS NEXT FRIEND OF CHRISTOPHER SHANE STRICKLAND, JR.**                                    APPELLANT

**v.**

**RANKIN COUNTY SCHOOL DISTRICT**                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/02/2019 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES MICHAEL PRIEST JR. |
| | TIMOTHY D. MOORE |
| ATTORNEYS FOR APPELLEE: | WALKER REECE GIBSON |
| | FRED M. HARRELL JR. |
| | REBECCA SUZANNE BLUNDEN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 06/08/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WESTBROOKS, J., FOR THE COURT:**

## STATEMENT OF THE CASE

¶1.     Christopher Shane Strickland Sr. (Strickland) appeals the grant of summary judgment in favor of the Rankin County School District regarding allegations of personal injuries to his minor son Christopher Shane Strickland Jr. (Christopher). The circuit court ruled that his coaches' decision to let Christopher run a race after being stung by a wasp was protected by discretionary function immunity under the Mississippi Tort Claims Act. Finding no error, we affirm.

**STATEMENT OF THE FACTS**

¶2.     On September 6, 2016, Christopher, a sophomore member of the Northwest Rankin High School cross-country team, participated in a cross-country meet at Choctaw Trails in Clinton, Mississippi. After he arrived at Choctaw Trails but before his race began, a red wasp stung Christopher on his head. Christopher then informed his coaches.[1] According to Christopher, Coach Stringer told him to "man up" and run the race. Coach Suggett and Coach Stringer both claimed that Christopher told them he felt fine and wanted to run the race.

¶3.     After Christopher started the race, he became dizzy and fell, hitting his head. The following day, one of the athletic trainers at Northwest Rankin told Christopher's father that Christopher had a severe concussion. Christopher was then taken to an urgent care clinic and an emergency room.

¶4.     Amanda L. Witt, M.D., a specialist in neuromuscular medicine and physical medicine and rehabilitation, began treating Christopher in October 2016. Dr. Witt treated Christopher for sequelae of traumatic brain injury and thoracic spinal cord injury, including spastic paraplegia, memory deficits, decreased attention span, headaches, difficulty with functional mobility, delay in cognitive processing, and weakness and loss of sensation in his lower extremities. Dr. Witt testified, to a reasonable degree of probability, that the fall on September 6, 2016, caused Christopher's brain injury, spinal injury, and other complications.

¶5.     On January 11, 2017, Christopher's father filed a complaint against the Rankin County

---

[1] His coaches were Coach Taheri, Coach Kandi Stringer, and Coach Jackie Suggett.

School District asserting personal injury claims on Christopher's behalf. The claims were based on the coaches' decision to allow Christopher to run the cross-country race after being stung by a wasp and for failure to obtain or provide proper medical care after Christopher fell and hit his head during the race.

¶6.    The school district filed a motion for summary judgment on April 6, 2018, asserting that coaching responsibilities are discretionary functions and that the school district was immune from liability based on the exercise of those responsibilities. Christopher's father filed his response to the motion on May 14, 2018.  The circuit court withheld ruling on the motion to give the parties an opportunity to conduct additional discovery in light of the recent decision in *Wilcher v. Lincoln County Board of Supervisors*, 243 So. 3d 177 (Miss. 2018).

¶7.    After waiting several months for Strickland to conduct additional discovery in light of *Wilcher*, on April 25, 2019, the school district then filed an amended motion for summary judgment, again asserting discretionary function immunity. Strickland never submitted an amended motion addressing *Wilcher*, as allowed.  On June 20, 2019, Christopher's counsel submitted a letter to the circuit court arguing that the coaches' actions were "run of the mill negligence" and not policy decisions subject to discretionary function immunity.

¶8.    The circuit court held a hearing on the amended motion, at which Christopher's counsel acknowledged that they had not presented medical evidence to show a causal connection between Christopher's damages and any failure of the school district to obtain medical treatment pursuant to a concussion protocol. Alternatively, the court acknowledged that Christopher did produce medical evidence that the fall itself caused his injuries.

3

However, the court found that the decision to allow Christopher to participate in the race was covered by discretionary function immunity. The court then entered an order granting summary judgment to the school district. Christopher now appeals.

## STANDARD OF REVIEW

¶9.     We review "both challenges [to] grants of summary judgment and defenses of discretionary-function immunity de novo." *Smith v. Miss. Transp. Comm'n*, 292 So. 3d 231, 233 (¶6) (Miss. 2020). "A motion for summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Id.* (citing M.R.C.P. 56(c)).

## DISCUSSION

¶10.     Strickland raises the issue of whether the circuit court erred when finding that the school district was granted protection under discretionary function immunity. We find that the cross-country athletic program constitutes political policy; thus, the Rankin County School District was correctly granted the protection of discretionary immunity, and the decision of the circuit court is affirmed.

¶11.     Mississippi Code Annotated section 11-46-3(1) (Rev. 2012) provides immunity for state and political subdivisions from liability and suit for torts and torts of its employees stating:

> The Legislature of the State of Mississippi finds and determines as a matter of public policy and does hereby declare, provide, enact and reenact that the "state" and its "political subdivisions," as such terms are defined in Section 11-46-1, are not now, have never been and shall not be liable, and are, always have been and shall continue to be immune from suit at law or in equity on account of any wrongful or tortious act or omission or breach of implied term

4

or condition of any warranty or contract, including but not limited to libel, slander or defamation, by the state or its political subdivisions, or any such act, omission or breach by any employee of the state or its political subdivisions, notwithstanding that any such act, omission or breach constitutes or may be considered as the exercise or failure to exercise any duty, obligation or function of a governmental, proprietary, discretionary or ministerial nature and notwithstanding that such act, omission or breach may or may not arise out of any activity, transaction or service for which any fee, charge, cost or other consideration was received or expected to be received in exchange therefor.

Furthermore, section 11-46-5 (Rev. 2012) waives the immunity granted in 11-46-3 for "torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment." Section 11-46-9(1)(d) (Supp. 2016) also provides a specific exemption from liability (or an exemption from the waiver) "for any claim . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused."

¶12. In determining whether governmental conduct is discretionary, the court must answer two questions: "(1) whether the activity involved an element of choice or judgment; and if so, (2) whether the choice or judgment in supervision involves social, economic or political policy alternatives." *Miss. Dep't of Mental Health & Ellisville State Sch. v. Shaw*, 45 So. 3d 656, 659 (¶12) (Miss. 2010). Applying the two-prong test, Strickland argues that the activity involved an element of choice or judgment. Strickland contends that the judgment to allow Christopher to run in the cross-country competition did not involve social, economic, or political policies.

¶13. In *Clein v. Rankin County School District*, 78 So. 3d 384, 386 (¶2) (Miss. Ct. App.

5

2012), Clein, an eighth-grade student, suffered injuries while participating in his physical-education class. Coach Marney Walker, the instructor for the physical-education class, had instructed the students to "run the bleachers," referring to the concrete stadium bleachers behind Brandon Middle School. *Id.* Clein stated that while walking back down the steps, his foot slipped, and he fell headfirst down three or four steps. *Id.* Clein testified that he then crashed face-first into the metal rail at the bottom of the steps, knocking out his front teeth and spraining his knee. *Id.* Clein argue[d] that Coach Walker's actions failed to constitute a "discretionary function or duty" under section 11-46-9. *Id.* at 387 (¶10). This Court held that regulating the establishment and operation of athletic programs and other school activities, such as physical-education classes, constitutes an exercise of political policy, thus satisfying the second prong of the discretionary function analysis. *Id.* at 389 (¶17).

¶14. Similarly, the actions of Strickland's coaches were within their discretionary function as encompassed within the discretion of the school district. As Strickland points out in his brief, the Mississippi Supreme Court has previously held that a school district's discretionary decision to allow coaches the ability to set and conduct practices is rooted in policy—coaches know their players and must be able to control their teams. *Covington Cnty. Sch. Dist. v. Magee*, 29 So. 3d 1, 8 (¶14) (Miss. 2010).[2] *Magee*, while decided prior to *Wilcher*, does offer guidance on whether a coach's action is rooted in policy. In *Magee*, our Supreme Court

---

[2] *Magee* and *Clein* apply the two-part public-policy-function test that the Supreme Court "abolish[ed]" in *Brantley v. City of Horn Lake*, 152 So. 3d 1106, 1112 (¶19) (Miss. 2014), but then re-adopted in *Wilcher*, 243 So. 3d at 188-89 (¶36).

6

considered coaching responsibilities from the perspective of the school district. However, it can also be applicable to an individual coach. The court stated:

> Coaches have to know what motivates their players and what does not. Coaches know that in order to discipline football players, each one is a different human being—one player may be disciplined by a mere stern look from the coach, while a military-style drill sergeant chewing out will not faze another player. Coaches will know their players well enough to know who may holler "wolf" and who will not . . . [c]oaches around the state would lose their ability to control their football teams. Discipline of a [] team would become non-existent. If a coach refused a player's request to have a water break—to see a trainer—to not have to run any more wind-sprints—to not have to do any more one-on-one blocking/tackling drills, because of that player's complaint of "feeling weak" or "not feeling good" or simply "not feeling like it," that coach would be very much aware of the fact that he/she would be running the risk of being successfully sued along with other school officials and the school district, should that player later suffer physical/medical problems related to the coach's failure to cow to the player's every whim and wish. On the other hand, if the coach, in fear of a successful lawsuit, should cow to the player's every whim, wish and demand, then the coach would lose the respect of the players, and discipline and morale would be lost . . . coaches know their players and must be able to control their teams.

*Id.*

¶15.    The Supreme Court's analysis in *Prince v. Louisville Municipal School District*, 741 So. 2d 207 (Miss. 1999), is applicable here under *Wilcher*. The court determined "that the nature of a coach's job is important to consider." *Id.* at 212 (¶20).  In *Prince*, high school football coaches were entitled to qualified immunity from a student's claim that he suffered a heat stroke during football practice due to the coaches' negligence; there was no evidence that the coaches did anything beyond exercising ordinary discretion in supervising football practice. *Id.* at 209, 212 (¶¶5, 20).  The court further stated:

> In a typical practice there are strains, sprains and complaints from a coach's players. A coach must consider the good order and discipline of the team when

7

> confronted with situational complaints by the players. A coach must use his discretion in judging whether or not an individual player is injured and then, whether the player should report to a trainer or seek other medical aid. There was no evidence presented . . . to show that either [coach] did anything beyond exercising ordinary discretion in supervising the [] football practice . . . .

*Id*. at 212 (¶20). Coaches must set guidelines and principles associated with training and disciplining their athletes, which may be complex because the athlete's climax will often test the human body and spirit. Inasmuch, the decisions and actions of coaches is anchored in social policy.

¶16. The dissent is correct that we must look at the substance of the specific event or activity in question. Examining such, there is simply nothing that constitutes negligence in the case at hand. Each of the athletic coaches recalled Christopher reporting that he may have been stung by a wasp, and after examining him, they found no evidence of a sting, swelling, or any adverse medical conditions. Medical professionals in attendance also provided medical aid. However, Christopher attested that he was fine and able to run. Not only did Christopher's parents sign a Mississippi Athletic Pre-Participation Form stating that he was not allergic to any insect or wasp stings, Christopher reiterated that he was not allergic to stings during the incident. During warm-up, the coaches followed up with Christopher, who stated he was fine and able to run the race. Christopher also was not required to participate in the race but desired to do so. Having developed a coach/athlete relationship with Christopher, they found no reason to disbelieve Christopher and allowed him to run.

¶17. The question we must examine is whether there was ordinary care provided; there was. The coaches provided care to Christopher following a sting that was at no fault of their

8

own. After checking on Christopher several times, he indicated that he desired to run in the race. As a result, the coaches did not act negligently. Again, the cross-country athletic program constitutes social policy, satisfying the test and the grant of discretionary immunity that was extended to the district was also extended to the coaches who were acting within their discretion. The trial court found that there was no causal connection between the sting and the medical diagnosis; thus, the Rankin County School District was protected by discretionary immunity, and the circuit court's decision is affirmed.

¶18.   **AFFIRMED.**

**WILSON, P.J., GREENLEE AND SMITH, JJ., CONCUR.  LAWRENCE, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. BARNES, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, P.J., McDONALD AND McCARTY, JJ.  EMFINGER, J., NOT PARTICIPATING.**

**BARNES, C.J., DISSENTING:**

¶19.   When the Mississippi Supreme Court reinstated the public-policy-function test in *Wilcher v. Lincoln County Board of Supervisors*, 243 So. 3d 177, 187 (¶30) (Miss. 2018), the Court acknowledged that not all of its prior decisions had applied the test appropriately.[3] *Id.* at 185 (¶23).  Thus, I find that when we review a claim under the Mississippi Tort Claims Act (MTCA), we must determine whether the pre-*Wilcher* cases appropriately apply the proper standard before we rely on them.  I do not find that the cases relied upon by the

---

[3] The *Wilcher* Court admitted that the test "is not perfect and has been misapplied in the past."  *Wilcher*, 243 So. 3d at 188 (¶33).  The Court specifically cited *Pratt v. Gulfport-Biloxi Regional Airport Authority*, 97 So. 3d 68, 75 (¶18) (Miss. 2012), which "stretched the bounds of 'policy'" beyond credulity by "holding the placement of nonslip tape on tarmac stairs was an operational decision involving economic policy and was thus immune." *Wilcher*, 243 So. 3d at 188 (¶33).

majority, *Clein v. Rankin County School District*, 78 So. 3d 384 (Miss. Ct. App. 2012), *Covington County School District v. Magee*, 29 So. 3d 1 (Miss. 2010), and *Prince v. Louisville Municipal School District*, 741 So. 2d 207 (Miss. 1999), do.

¶20.    Since *Wilcher*, we must analyze what constitutes policy anew and look at the specific event or activity being challenged.    *Wilcher*, 243 So. 3d at 188 (¶34).    "Because discretionary-function immunity 'protects only governmental reactions and decisions based on considerations of public policy,' . . . this Court must distinguish between *real policy decisions* implicating governmental functions and *simple acts of negligence* which injure innocent citizens." *Id.*  Therefore, "when reviewing whether a challenged action is afforded immunity, a court's focus is 'on the nature of the actions taken and whether they are susceptible to policy analysis.'" *Id.*  (quoting *United States v. Gaubert*, 499 U.S. 315, 325 (1991)).

¶21.    *Bailey v. City of Pearl*, 282 So. 3d 669, 676 (¶16) (Miss. Ct. App. 2019), is instructive and recently has been cited favorably by the Mississippi Supreme Court.[4]  In *Bailey*, a wrongful death suit was brought against the city after a woman died when an unsecured gate speared her car at a city ballpark. *Id.* at 671 (¶2).  While the city was found to be immune under the discretionary function exception for its decisions related to the design and construction of the park and its adoption of safety protocols for the public's use of the park, the city was not immune from any alleged negligent maintenance of the park. *Id.* at 677-78 (¶¶18, 20-22).  Therefore, this Court stated the key activity to be analyzed was the city's

---

[4] *See Williams v. City of Batesville*, 313 So. 3d 479, 484 (¶25) (Miss. 2021).

"failure to secure the gate or have an apparatus to secure the gate." *Id.* at 678 (¶21).

¶22. The majority cites to *Magee* and *Clein*, cases decided before *Wilcher* and which, I believe under a post-*Wilcher* analysis, are overly broad in applying the definition of "policy." In *Magee*, the Mississippi Supreme Court extended discretionary function immunity to a school district after a student died from a heatstroke during football practice. *Magee*, 29 So. 3d at 3, 8 (¶¶2, 14). The *Magee* Court focused on the decision of the school district to delegate authority to the coaches instead of decisions made by coaches in conducting practice on a hot day, stating, "The District's discretionary decision to allow coaches the ability to set and conduct practices is rooted in policy . . . ." *Id.* at 8 (¶14). Similarly, in *Clein*, this Court analyzed the broader function of the school district's regulating and operating athletic programs and other activities to find an exercise of public policy. *Clein*, 78 So. 3d at 389 (¶17). The tortious activity in question was the coach's instructions to a student to "run the bleachers," which resulted in the student's injury. *Id.* at 390 (¶20). A more proper analysis under *Wilcher* would be to look at the coach's actions.[5]

¶23. In *Pratt*, the supreme court held that the function at issue was the operation of the airport and found all day-to-day decisions regarding the airport's operation, including the placement of tape on the tarmac stairs, to be protected by discretionary immunity. *Pratt*, 97

---

[5] The majority also cites to *Prince*, another football-practice, student-heat stroke case, as applicable. But it is not. *Prince*, published in April 1999, pre-dates the adoption of the original public-policy-function test of *Jones v. Mississippi Department of Transportation*, 744 So. 2d 256 (Miss. 1999), published in June 1999. *Wilcher* reinstated the *Jones* test. *See Wilcher*, 243 So. 3d at 188-89 (¶36). Moreover, the cause of action in *Prince* dated back to 1991; thus, the supreme court explained it was applying sovereign immunity common law. *Prince*, 741 So. 2d at 210 (¶13). Therefore, the legal analysis of *Prince* is not determinative here.

So. 3d at 75 (¶18). *Wilcher* specifically determined that this analysis "stretched all bounds of 'policy' beyond credulity." *Wilcher*, 243 So. 3d at 188 (¶33). Here, the majority applies a similar analysis, providing immunity to all decisions made within the cross-country program. I cannot agree with this analysis.

¶24. The district is not immune simply because the injury occurred within a cross-country athletic program any more than *Pratt* can be followed in finding all that occurs in a municipal airport qualifies for immunity. The proper analysis requires identification of the specific activity that gave rise to the claim—here the coaches' decision to require Christopher run the race after being stung by a wasp. While the decision was discretionary, it was an isolated event involving one student and is not based on public policy considerations. Therefore, I cannot find the school district immune from liability for this incident.

¶25. Neither can I affirm based on any argument that there is no genuine issue of material fact regarding negligence. The circuit court's order states:

> Even if the [school district] had a ministerial duty, which the Court finds it did not, the Court finds that the [school district's] actions as to an alleged insect sting, any corresponding medical care, and any decision to allow [Christopher] to participate in the cross-country racing event exceeded the ordinary care standard. The Court finds no genuine issue of material fact exists for these claims or any other claim asserted by [Christopher] in this action.

While this finding was made with respect to whether a different immunity, section 11-46-9(1)(b), would apply,[6] it might be read to hold there was no genuine issue of material fact

---

[6] Section 11-46-9(1)(b) (Rev. 2019) provides immunity for claims "[a]rising out of any act or omission of an employee of a governmental entity *exercising ordinary care* in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid . . . ." (Emphasis added).

with respect to negligence (ordinary care) in general. However, the school district's motion for summary judgment never raised that issue—just that the school district was immune under the MTCA and that it followed the concussion protocol with respect to actions taken after Christopher's fall. Therefore, I cannot affirm on that basis.

¶26. While Strickland may not prevail in his negligence action against the school district, I cannot find the school district immune from liability for this incident. Accordingly, I would reverse the grant of summary judgment and remand the case to the circuit court for further proceedings.

**CARLTON, P.J., McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**