# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01627-SCT

*VICTOR LORELL HARRIS, A MINOR BY AND*
*THROUGH HIS MOTHER AND NEXT FRIEND,*
*BETTY JEAN HARRIS, AND ACTING*
*INDIVIDUALLY*

*v.*

*WILLIE McCRAY AND THE JEFFERSON COUNTY*
*SCHOOL DISTRICT*

| | |
|---|---|
| DATE OF JUDGMENT: | 4/9/2001 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | JEFFERSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ANITA M. STAMPS |
| ATTORNEYS FOR APPELLEES: | JOHN SIMEON HOOKS |
| | JAMES A. KEITH |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 10/23/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.     On April 26, 1996, Victor Lorell Harris (Harris), by and through his mother and next friend, Betty Jean Harris, filed suit in the Circuit Court of Jefferson County against Willie McCray (Coach McCray) and the Jefferson County School District (the School District) for damages resulting from a heatstroke Harris suffered while at football practice on August 21, 1995. The trial court conducted a bench trial. After a full hearing on the merits, the trial court issued its opinion and subsequently its final judgment. The trial court determined that Harris had suffered damages in the amount of $350,000, as a result of the School District's

negligence. However, the trial court concluded that the School District was immune from liability under the Mississippi Torts Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1 to -23 (Rev. 2002 & Supp. 2003). The trial court entered judgment for the School District and McCray and denied Harris's motion for reconsideration, new trial and other relief. Harris perfected his notice of appeal to this Court.

## FACTS

¶2. On August 21, 1995, Harris, then a fifteen-year-old student enrolled at Jefferson County High School, alleged he suffered a heatstroke while participating in scheduled football practice. The football practice was scheduled and conducted by Coach McCray in his capacity as head football coach. As head football coach, Coach McCray had the discretion to determine the time that practice would be conducted and the nature of the practice, including the timing of breaks and cancellation of practice. At all times, Coach McCray was acting within the course and scope of his employment as an employee of the School District.

## LEGAL ANALYSIS

¶3. While raising various issues on appeal, the dispositive issue raised by the parties necessary for this Court to address is whether the trial court erred in determining that the School District, as a political district and a governmental entity, had immunity from liability under the MTCA for the discretionary acts of an employee acting within the course and scope of his employment pursuant to Miss. Code Ann. § 11-46-9(1)(d).

¶4. A governmental entity and its employee enjoy immunity if there is exercise of ordinary care in the performance of a duty under a statute, ordinance or regulation. Miss. Code Ann. § 11-46-9(1)(b) (Rev. 2002). On the other hand, a governmental entity and its employee enjoy immunity under Miss. Code Ann.

2

§ 11-46-9(1)(d) "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion be abused."

¶5.     After the bench trial, the trial court determined that, "[b]ased on the evidence adduced in this cause...the damages incurred by the plaintiff were a direct and proximate result of the negligent acts and omissions of Coach McCray."  The trial court found that Harris suffered damages in the amount of $350,000, including the $68,000, in medical bills.    However, the trial court further determined that pursuant to the MTCA, where the governmental conduct is a discretionary act, governmental entities and their employees are entitled to immunity pursuant to Miss. Code Ann. § 11-46-9(1)(d).  The trial court referenced *Prince v. Louisville Mun. Sch. Dist.*, 741 So.2d 207, 211-12 (Miss. 1999), where this Court held that the decisions and acts of high school coaches are considered discretionary.  Accordingly, the trial court entered a judgment in favor of the School District and Coach McCray.

¶6.     We find that the trial court correctly determined that Harris's reliance on *L.W. v. McComb Separate Municipal School District*, 754 So.2d 1136, 1141 (Miss. 1999), was misplaced.  The trial court herein further stated that, "plaintiff [Harris] has made no showing of any failure on the part of defendants herein to exercise reasonable care in the performance of or in the failure to execute or perform a statute, ordinance or regulation." *L.W.* involved the issue of whether the school district and its employees had violated its statutory duty to provide a safe environment for its students.  Clearly, this case was decided based on the application of Miss. Code Ann. § 11-46-9(1)(b); therefore, the discussion on ordinary care was quite appropriate. *Id*. at 1140-43.  In short, a governmental entity and its employee enjoy immunity if ordinary care is exercised in the performance of a duty under a statute, ordinance or regulation.  Miss. Code Ann. § 11-46-9(1)(b).  On the other hand, a governmental entity and its employee have immunity

under Miss. Code Ann. § 11-46-9 (1)(d) "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty ... whether or not the discretion be abused."

¶7.    The facts of *L.W.* are obviously distinguishable from the case sub judice.  In *L.W.*, the complaint alleged:

> On October 9, 1995, the minor plaintiff/appellant J.A. turned fourteen years old. J.A. is a student at Denman Middle School in McComb School District.  On that morning, J.A. was threatened by a fellow student, Matthew Garner, while in music class.  J.A. told Mr. Dykes, a nearby teacher, of the threats.  The teacher did nothing in response.
> That afternoon, both J.A. and Matthew were in after-school detention.  During this time, Matthew again threatened J.A. in front of the detention teacher, Mrs. Paul.  As they left detention, Matthew followed J.A. across the school's baseball field.  At this point, words were exchanged, and Matthew attacked J.A.  Matthew struck him in the face and ordered him to perform oral sex.  When J.A. resisted, Matthew continued to beat him and forced him to perform the act.  The incident was witnessed by one student and later reported to a coach.  Upon knowledge of the incident, J.A. was taken by his mother, L.W., to the hospital.

754 So.2d at 1137.

¶8.    This Court in *L.W.* further held that Miss. Code Ann. § 37-9-69 "mandates that school personnel maintain appropriate control and discipline of students while the children are in their care." *Id*. at 1142.

Miss. Code Ann. § 37-9-69 (Rev. 2001) provides:

> It shall be the duty of each superintendent, principal and teacher in the public schools of this state to enforce in the schools the courses of study prescribed by law or by the state board of education, to comply with the law in distribution and use of free textbooks, and to observe and enforce the statutes, rules and regulations prescribed for the operation of schools.  Such superintendents, principals and teachers shall hold the pupils to strict account for disorderly conduct at school, on the way to and from school, on the playgrounds and during recess.

Again, this is not the factual situation at bar.

¶9.    The MTCA operates as the exclusive civil remedy over any other civil action or civil proceeding by reason of the same subject matter for damages against a governmental entity or against its employee for the acts or omissions that gave rise to the claim or suit. *See* Miss. Code Ann. § 11-46-7(1). *See also*

*L.W.*, 754 So.2d at 1145 (MTCA provides the exclusive civil remedy for claims of negligence against a school district). Miss. Code Ann. § 11-46-3(1) provides in pertinent part:

> [T]he "state" and its "political subdivisions," as such terms are defined in Section 11-46-1, are not now, **have never been and shall not be liable**, and are, always have been and **shall continue to be immune from suit at law or in equity on account of any wrongful or tortious act or omission** or breach of implied term or condition of any warranty or contract...by the state or its political subdivisions, or any such act, omission or breach by any employee of the state or its political subdivisions, **notwithstanding that any such act, omission or breach constitutes or may be considered as the exercise or failure to exercise any duty, obligation or function of a governmental, proprietary, discretionary or ministerial nature** and notwithstanding that such act, omission or breach may or may not arise out of any activity, transaction or service for which any fee, charge, cost or other consideration was received or expected to be received in exchange therefor.

(emphasis added).

¶10. Working in conjunction with Miss. Code Ann. § 11-46-3(1), Miss. Code Ann. § 11-46-1(i) defines "political subdivisions" to specifically include school districts. Miss. Code Ann. § 11-46-1(g) provides that "'governmental entity' means and includes the state and its political subdivisions." Miss. Code Ann. § 11-46-9(1)(d) provides:

> (1) **A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim**:
>
> (d) **Based upon** the exercise or performance or **the failure to exercise or perform a discretionary function or duty** on the part of the of a governmental entity or employee thereof, **whether or not the discretion be abused.**

(emphasis added).

¶11. This Court finds that the trial court properly analyzed the statutes addressed above concluding that the School District was a governmental entity which fell within the statutory provisions providing immunity from liability.

¶12.     When an official is required to use his own judgment or discretion in performing a duty, that duty is discretionary.  *See **T.M. v. Noblitt,*** 650 So.2d 1340, 1343 (Miss. 1995).  *See also **Poyner v. Gilmore,*** 171 Miss. 859, 158 So. 922, 923 (1935).   In ***Prince,*** this Court held that the actions of the high school coaches were discretionary in nature.  ***Prince,*** 741 So.2d at 211-12.  The Court in ***Prince*** dealt with facts virtually identical to the case sub judice.

¶13.     While admittedly involving application of "pre-***Pruett***"[1] common law concerning whether the act involved was a discretionary or ministerial function, our decision in ***Prince***, is enlightening. Prince was a member of the Nanih Waiya High School football team in the Louisville Municipal School District.  ***Id.*** at 208.  Prince alleged that while practicing football, he suffered a heatstroke due to the negligence of the football coaches in charge of the practice.  Prince incurred medical expenses as a result of the heat related injuries.  ***Id.*** at 208-09.  Prince filed suit against the school district and two of the high school football coaches for their alleged negligent actions during an August, 1991, football practice.  In ***Prince***, we stated:

> high school football coaches Bowman and Chambliss were responsible for coordinating and supervising the football program at Nanih Waiya High School...In a typical practice there are strains, sprains and complaints from a coach's players. A coach must consider the good order and discipline of the team when confronted with situational complaints by the players. A coach must use his discretion in judging whether or not an individual player is injured and then, whether the player should report to a trainer or seek other medical aid. There was no evidence presented in the lower court to show that either Bowman or Chambliss did anything beyond exercising ordinary discretion in supervising the Nanih Waiya football practice on August 29,1991. Prince produced no facts that evidenced any disregard for his health or any other outrageous action on the part of Bowman or Chambliss that might have warranted a departure from our previous holdings. The trial court correctly found the coaches were protected by qualified immunity.

---

[1]  ***Pruett v. City of Rosedale***, 421 So.2d 1046 (Miss. 1982).

*Id.* at 212. We affirmed the trial court's granting summary judgment in favor of the school district reasoning that the school district was protected by sovereign immunity and the trial court's granting summary judgment as to the coaches based on qualified immunity. *Id.* at 211-12.

¶14. Both *Prince*, and the Alabama Supreme Court case cited in *Prince*, offer insight into the arduous duties and responsibilities of a high school football coach. *Id*. at 211-12. In *Lennon v. Petersen*, 624 So.2d 171 (Ala. 1993), an injured soccer player (Lennon) sued his coach (Petersen) and a school trainer claiming negligence in not recognizing his injuries and providing proper treatment. The Alabama Supreme Court had this to say:

> Petersen's actions clearly fall into the category of discretionary acts. Petersen had to rely on his own judgment and discretion in making difficult decisions while performing his job. He had to determine what drills his players needed and how long the drills should last. He also had to evaluate his players to determine if they were playing to the best of their ability. He had to make difficult decisions in determining whether a player was injured and should report to the trainer or whether the player was merely faking an injury to avoid practice. He also had to be aware that some players would hide their injuries so that they would be allowed to practice or to play in a game. He was responsible for motivating the players and evaluating their performance. Petersen was acting within his authority in using his discretion in such matters, and he is entitled to discretionary function immunity.

*Lennon*, 624 So.2d at 174 (quoted in *Prince*, 741 So.2d at 211-12).

¶15. We find that the trial court properly determined that the acts or omissions of Coach McCray, performed in his capacity as head coach within the course and scope of his employment, were discretionary in nature. We affirm the trial court's ruling that the School District and Coach McCray were immune from liability. Miss. Code Ann. § 11-46-9(1)(d) specifically provides that there is no liability whether or not there is there has been an abuse of discretion in performing the duty. We must balance the serious negative repercussions which could result for all extra-curricular school activities if the discretionary decisions of coaches are not exempt from liability pursuant to Miss. Code Ann. § 11-46-9(1)(d) with the need for

7

providing a well-rounded education. There is nothing in the record to imply that Coach McCray's actions as a football coach on August 21, 1995, violated any statute, ordinance, or regulation.

¶16. Who knew the football players of the 1995 Jefferson County High School football team better than Coach McCray? He knew what players would complain only when hurt and what players would complain at a drop of a hat simply to be able to take a break from football practice on a hot August day. Coaches have to know what motivates their players and what does not. Coaches know that in order to discipline football players, each one is a different human being – one player may be disciplined by a mere stern look from the coach, while a military-style drill sergeant chewing out will not faze another player. Coaches will know their players well enough to know who may holler "wolf" and who will not. When Victor Harris complained of feeling weak and needing a water break, Coach McCray told Harris he was "faking it." Unfortunately, he was not. Harris's injuries and resulting damages are not to be treated flippantly. However, we cannot fast-forward past the facts of this case and the applicable law just to arbitrarily impose liability in an attempt to right a perceived wrong.

¶17. While the facts of Victor Harris's case are no doubt tragic, we must realize the consequences of our decision today were we to find Coach McCray and the school district liable on the facts of this case. High school football coaches around the state would lose their ability to control their football teams. Discipline of a football team would become non-existent. If a coach refused a player's request to have a water break – to see a trainer – to not have to run any more wind-sprints – to not have to do any more one-on-one blocking/tackling drills, because of that player's complaint of "feeling weak" or "not feeling good" or simply "not feeling like it," that coach would be very much aware of the fact that he/she would be running the risk of being successfully sued along with other school officials and the school district, should that player later suffer physical/medical problems related to the coach's failure to cow to the player's every

8

whim and wish. On the other hand, if the coach, in fear of a successful lawsuit, should cow to the player's every whim, wish and demand, then the coach would lose the respect of the players, and discipline and morale would be lost.

¶18. Since Coach McCray's actions and duties in coaching his football team were clearly discretionary, then, under Miss. Code Ann. § 11-46-9(1)(d), our inquiry ends without any discussion about whether Coach McCray exercised ordinary care and without any imposition of potential liability upon Coach McCray or the Jefferson County School District. Harris's assignment of error is without merit. Therefore, we affirm the judgement of the trial court.

## CONCLUSION

¶19. While this was unquestionably a tragic situation, this Court finds that Miss. Code Ann. § 11-46-9(1)(d) operated to shield the School District and Coach McCray from any liability. Therefore, we find that the trial court did not err in its determination that the School District and Coach McCray were exempted from liability. For the foregoing reasons, the final judgment of the trial court in favor of the School District and Coach McCray is affirmed.

¶20. **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB AND CARLSON, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶21. The majority erroneously finds that the acts and/or omissions which resulted in the serious injury of a fifteen-year-old football player are entitled to absolute immunity under the Mississippi Tort Claims Act ("MTCA"). Having reviewed the facts and finding the acts and/or omissions of Coach

9

Willie McCray ("McCray") to be below the applicable standard of care, I dissent and assert that even under the MTCA both the Jefferson County School District and McCray may be held liable for Victor Harris's injuries.

¶22. There are two alternative reasons which support the reversal of the trial court's dismissal of this action. First, under *L.W. v. McComb Separate Mun. Sch. Dist.*, 754 So.2d 1136 (Miss. 1999), and *Henderson v. Simpson County Public Sch. Dist.*, 847 So.2d 856 (Miss. 2003), the coach failed to use ordinary care in the supervision of his players' well-being and health. Second, even if this Court were to view the acts of the coach as "discretionary," the acts were still not "discretionary" within the meaning of the MTCA since they did not involve social, economic, or political policy under *Jones v. Miss. Dep't of Transp.*, 744 So.2d 256 (Miss. 1999), and *Stewart ex rel. Womack v. City of Jackson*, 804 So.2d 1041 (Miss. 2002) (*Stewart*), and since the acts were not performed with "ordinary care," the immunity shield provided for by the MTCA does not apply.

¶23. The acts performed by the coach were that of a "teacher" or "educator," since his function was to teach and guide his players not only in the performance of sports, but also in the area of discipline and motivation. As a teacher, the coach must perform his duties using ordinary care. The circumstances presented in this case are factually and substantively similar to those presented in *Henderson*, 847 So.2d 856. Henderson, an eleven-year-old student, was assaulted by Price, a fellow student, during class. *Id.* at 857. Testimony indicated that before the incident, Price had been loudly taunting and threatening Henderson in full view of the teacher. *Id.* The teacher failed to discipline or stop Price from threatening Henderson. *Id.* Price struck Henderson resulting in a fractured tooth, a concussion, and a fracture in the inferior orbit of his right eye. *Id.* Henderson filed suit against the school district. *Id.* at 856. The trial

court granted summary judgment in favor of the school district finding immunity applicable under the MTCA *Id.* On appeal, we held that summary judgment was not appropriate as material issues of fact existed with regard to whether the teacher exercised "ordinary care." *Id.* at 857-58.

¶24.    Under the present circumstances, the record contains ample evidence showing that the coach failed to use ordinary care in his responsibility and implementation of authority over Harris and the other players. As a teacher and mentor, the coach was required to use  ordinary care in his guidance and direction and place appropriate emphasis on the physical as well as mental well-being of his players.  Having failed to exercise ordinary care, the school is not entitled to the immunity protections of the MTCA as we have found in *L.W.*, 754 So.2d 1136, and *Henderson*, 847 So.2d 856.[2]

---

[2] As a side note, a Friday, August 8, 2003, Editorial in the USA Today titled *Football Players Feel the Heat as Leagues Ignore Safeguards*, addressed this very issue:

> In the past eight years, 21 players have died from heatstroke – 16 of them high schoolers, according to the National Center for Catastrophic Sport Injury Research.
>
> Prodded by three college deaths since 2000, the NCAA is tackling the deadly heat this year with new rules that ban the most grueling practice regimen – twice daily drills – on consecutive days.  But in spite of the warning of [Korey] Stringer's death and a lawsuit against the National Football League filed last week by his widow, the NFL still hasn't gotten the message.  Nor has state high school associations that oversee the youngest, and most vulnerable, players. . . .
>
> The danger is most acute in high schools, where 1 million payers are heading onto practice fields this month.  Yet a national high school sports federal collects statistics that only on heatstroke deaths, not serious illness.  And other evidence shows school officials are not confronting the problem:
>
> > **-Grueling drills.** Many high schools still engage in the very regimen that the NCAA just banned, continual two-a-day practices.  Nor are high schools required to follow another new NCAA rule: a three-hour break between two practices on the same day.
> >
> > **-Patchwork rules.**  While the national federation sets rules on everything from blocking to safety gear, it leaves states on their own to deal with heatstroke, creating a jumble of protections – if any.
> >
> > -**Simplistic approaches.**  While most high schools take some precautions, such as providing breaks and ample water, preventing heatstroke also requires special training.  The subtle symptoms of

11

¶25.    Alternatively, in order to be granted immunity protection under Miss. Code Ann. § 11-46-9, the state or political subdivision must pass a three-part test.  The first step involves a factual determination of whether the act and/or omission which caused injury is a discretionary or ministerial duty.  *Stewart*, 804 So.2d at 1047 (citing *Jones*, 744 So.2d at 260).[3]  A discretionary act involves an element of judgment or choice.  *Id.*  "A duty is discretionary if it requires the official to use her own judgment and discretion in the performance thereof."  *Id.* at 1048  (citing *T.M. v. Noblitt*, 650 So.2d 1340, 1343 (Miss. 1995)).[4]  "[A]n act is ministerial '(if) the duty is one which has been positively imposed by law and its performance required at the time and in a manner or under conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion.'"  *Id.* (quoting *L.W.*, 754 So.2d at 1141).  Clearly, McCray's acts were discretionary, but that does not end our inquiry.

---

heatstroke easily can be overlooked or mistreated.  Medical experts say seconds can make the difference between life and death or full recovery and brain damage. . . .

Not enough common sense was exercised, however, to prevent the critical illness of an Altoona, Pa., senior who lay unconscious for 20 hours last August.  Or the seven-week hospitalization last summer of a Winfield, Ala., player who collapsed while battling to make the varsity team.

A report by the sport injury research center says, "There is no excuse for any number of heatstroke deaths since they are all preventable with the proper precautions."  Even the U.S. military recognizes that: It bans fitness and sports activities on days when heat and humidity reach dangerous levels.

[3] *See also United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).

[4] *See also Poyner v. Gilmore*, 171 Miss. 859, 158 So. 922, 923 (1935).

¶26. If the act is deemed to be a discretionary duty, the second step calls for a factual determination of whether the choice involves social, economic, or political policy. *Jones*, 744 So.2d at 260.[5] "[O]nly those functions which by nature are policy decisions, whether made at the operational or planning level, are protected." *Stewart,* 804 So.2d at 1048.[6]

¶27. In *Stewart*, we examined whether the City of Jackson and its employee were immune from liability under § 11-46-9 for damages sustained by Stewart. *Id.* at 1045-46. The City of Jackson provided a shuttle van service for elderly citizens to an adult day care center operating at the University of Mississippi Medical Center (UMMC). *Id.* at 1045. While exiting the van and crossing the street into UMMC, Stewart fell and eventually suffered a stroke. *Id.* at 1045-46. Stewart claimed that her injuries were due to the City employees' failure to assist her across the street. *Id.* In determining whether these acts and/or omissions were immune from liability, we held that the acts and/or omissions involved were not "real policy decisions implicating governmental functions." *Id.* at 1048. We went on to state that "[e]ven though the acts or omissions of the City of Jackson and Spiller, the City employee, were indeed discretionary, they are not the type of discretionary acts or omissions contemplated as granting immunity by the MTCA." *Id.*

¶28. This same reasoning applied to the present facts leads to the same conclusion. McCray's acts and/or omissions may have been discretionary, but they did not involve social, economic, or political policy.

---

[5] *See also* **Stewart ex rel. Womack v. City of Jackson**, 804 So.2d 1041, 1048 (Miss. 2002).

[6] The majority fails to realize that not all discretionary acts are protected under the MTCA. Only those discretionary acts which are directed at social, economic, or political policy are protected. That has been the standard adopted by this Court. **Jones v. Miss. Dep't of Transp.**, 744 So.2d 256, 260 (Miss. 1999). Furthermore, the acts and omissions of a high school football coach were not contemplated for immunity under the MTCA.

Furthermore, they are not the type of acts which the MTCA contemplated would receive immunity. With this finding, the analysis could stop at step two since the acts and/or omissions fail to meet the criteria for immunity. However, it is worth the time and effort to explore step three.

¶29.     The third step involves a factual determination of whether the discretionary act in question was conducted using ordinary care. "Miss. Code Ann. § 11-46-9 requires a minimum standard of ordinary care." *Jones*, 744 So.2d at 263 (quoting *L.W.*, 754 So.2d at 1141).[7] "[P]ublic schools have a responsibility to provide a safe environment for students; therefore ordinary care and reasonable steps must be taken to minimize risk to students .... In other words, ordinary care must have been used before a school can use the statutory shield of immunity." *Stewart*, 804 So.2d at 1049 (quoting *Pearl Pub. School Dist. v. Groner*, 784 So.2d 911, 915 (Miss. 2001)). There can be no doubt that McCray failed to use ordinary care. Testimony indicated that it was unreasonable, improper, and contrary to ordinary care to only allow one water break during a two-hour practice in the hot August sun. McCray's failure to exercise ordinary care also forecloses the School's protections under § 11-46-9.

¶30.     Under either theory, since the acts and/or omissions which caused Harris's injuries were not that of ordinary care, the School is not entitled to immunity. For these reasons, I would reverse the order of the trial court as to the issue of immunity and remand the case for further proceedings.

¶31.     For the above-stated reasons, I dissent.

---

[7] *See also* **Wright v. United States**, 866 F. Supp. 804, 806 (S.D.N.Y. 1994); **Pearl Pub. Sch. Dist. v. Groner**, 784 So.2d 911, 915 (Miss. 2001); **Stewart ex rel. Womack v. City of Jackson**, 804 So.2d 1041, 1049 (Miss. 2002); **Leflore County v. Givens**, 754 So.2d 1223, 1227 (Miss. 2000).