BARNES, J.,
 

 for the Court.
 

 ¶ 1. Christopher James Strange (C.J.), a minor, by and through his mother Judith Strange (Strange), appeals the judgment of the Circuit Court of Itawamba County, which granted summary judgment in favor of the Itawamba County School District (District). Finding no error, we affirm.
 

 STATEMENT OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On February 17, 2005, C.J. was seriously injured when he fell from the bed of a pickup truck while being transported by another student to ninth-grade football practice. The incident occurred on the school grounds of Itawamba Agricultural High School in Fulton, Mississippi, during school hours. Typically, student football players either walked or drove to practice on an access road that led from the school’s parking lot to the football complex. Students would try to find a ride because, as C.J. testified, “if we didn’t find a ride over there, we’d have to walk, and nobody really wanted to walk.” On this date, C.J. had left his sixth-period class and proceeded to the school parking lot to go to football practice. Two other football players and C.J. climbed into the back of another student’s pickup truck. As the truck was being driven down the access road, C.J. stood up and pretended to “surf’ in the bed of the truck. C.J. testified that as the truck went around the curve, he tried to walk from the tailgate area to the toolbox to sit down; he then fell out of the truck. He was immediately taken by ambulance to a local hospital. C.J. sustained several cuts and bruises, as well as a fractured skull.
 

 ¶ 3. On February 15, 2006, C.J. filed a complaint, by and through his mother, against the District, claiming personal injuries based on negligence, negligent supervision, and breach of fiduciary duty. On May 31, 2007, the District filed a motion for summary judgment and an itemization of undisputed facts. In its motion, the District claimed it was immune from suit under the discretionary function exemption of the Mississippi Torts Claim Act, pursuant to Mississippi Code Annotated section 11 — 46—9(l)(d) (Rev.2002).
 

 
 *1189
 
 ¶ 4. On June 19, 2007, the District’s counsel wrote a letter to the circuit court judge requesting a ruling on its motion for summary judgment, as Strange’s time to file a response had expired. The District attached a draft order to its letter and sent a copy of this letter to Strange’s counsel. Upon receipt of this letter on June 21, 2007, Strange’s counsel requested an extension from the circuit court in order to file his response. However, the record does not indicate that one was granted. Later that day, Strange’s counsel learned that the circuit court judge had already signed the order granting summary judgment to the District.
 
 [1]
 
 Therefore, Strange’s counsel prepared and faxed a response to the District’s motion for summary judgment and itemization of undisputed facts, which were filed in the circuit court on June 22, 2007. The circuit court’s order was stamped “filed” on June 27, 2007. On June 28, 2007, Strange filed a motion to set aside the judgment and for reconsideration that was entered by the circuit court on July 2, 2007. The District filed a response to this motion. On August 30, 2007, the circuit court entered an order denying Strange’s motion to reconsider the summary judgment. Strange timely appeals, raising two issues: whether the circuit court erred in (1) granting summary judgment and (2) not conducting a hearing or reviewing Strange’s evidence before granting summary judgment.
 

 STANDARD OF REVIEW
 

 ¶ 5. This Court utilizes a de novo standard to review the trial court’s grant or denial of summary judgment.
 
 Harrison v. Chandler-Sampson Ins., Inc.,
 
 891 So.2d 224, 228(¶ 11) (Miss.2005) (citing
 
 Satchfield v. R.R. Morrison & Son, Inc.,
 
 872 So.2d 661, 663(¶ 5) (Miss.2004)). Evidence will be analyzed in the light most favorable to the party opposing the motion.
 
 Id.
 
 “[T]he pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,” properly before the trial court, will be reexamined by this Court in order to determine if there is any genuine issue of material fact. M.R.C.P. 56(c). Summary judgment is proper if the record shows “that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”
 
 Id.
 

 DISCUSSION OF THE ISSUES
 

 1. Summary Judgment.
 

 ¶ 6. The foundation of the MTCA is sovereign immunity — that the State of Mississippi and its political subdivisions “are not now, have never been and shall not be liable, and are ... immune from suit” for wrongful or tortuous acts or omissions. Miss.Code Ann. § 11-46-3(1) (Rev.2002). However, the MTCA waives sovereign immunity for claims of money damages arising out of the torts of governmental entities and their employees while acting within the course and scope of their employment. Miss.Code Ann. § 11-46-5(1) (Rev.2002). A school district is considered a “political subdivision” and a “governmental entity” under the MTCA. Miss.Code Ann. § 11 — 46—1(g) and (i) (Rev. 2002). The MTCA provides certain circumstances are exempted from this waiver of immunity; thus, the governmental entity is not liable.
 
 See
 
 Miss.Code Ann. § 11-46-9 (Supp.2008). One such instance is if a governmental entity and its employees, acting within the course and scope of their employment, has a claim against them
 
 *1190
 
 “[b]ased upon the exercise or perfonnance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee ... whether or not the discretion be abused.” Miss.Code Ann. § 11 — 46—9(l)(d) (Supp. 2008).
 

 ¶ 7. The circuit court granted the District’s motion for summary judgment, in which the District argued that its conduct was discretionary in nature and rendered the District immune from liability under the discretionary function exemption of the MTCA pursuant to section 11 — 46—9(l)(d). The Mississippi Supreme Court adopted in
 
 Jones v. Mississippi Department of Transportation,
 
 744 So.2d 256, 260(¶ 11) (Miss.1999) (citing
 
 United States v. Gau-bert,
 
 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)) the two-part “public policy function” test to determine if governmental conduct is discretionary. First, the court must determine whether the act involved “an element of choice or judgment.”
 
 Id.
 
 at 260(¶ 10) (citation omitted). If so, then the court must decide “whether the choice involved social, economic, or political policy.”
 
 Id.
 
 Governmental conduct is considered ministerial “if it is imposed by law and the performance of the duty is not dependent on the employee’s judgment.”
 
 Id.
 
 at 259-60(¶ 9) (citing
 
 Barrett v. Miller,
 
 599 So.2d 559, 567 (Miss.1992)).
 

 ¶ 8. Strange argues that there is a genuine issue of material fact about whether the conduct of the football coach, under the discretionary function exception, involves social, economic, or political policy. Second, he argues there is a genuine issue of fact about whether or not the coach used ordinary care to minimize the risk of personal injury to the football players.
 

 ¶ 9. This Court must determine whether the District or its employees, in allowing students to ride in the back of a pickup truck, not just to football practice, but anywhere on school grounds, is a discretionary act. In order to make this determination, this Court must first ascertain whether the conduct involved an “element of choice or judgment.” While riding in the back of a pickup truck involves safety issues, neither party has cited, nor have we been able to find, any statutory prohibition of this act in Mississippi.
 
 [2]
 

 ¶ 10. We find
 
 Dotts v. Pat Harrison Waterway District,
 
 933 So.2d 322, 326(¶ 10) (Miss.Ct.App.2006) analogous to the instant case. In
 
 Dotts,
 
 this Court upheld the trial court’s determination that the water district had discretion in making decisions regarding the operation of its water park within the meaning of the MTCA and, thus, was immune, because Mississippi had no statutory requirements on this topic. Here, since there is no statutory duty for the District or its personnel to regulate or disallow this conduct, there is an element of choice by the District.
 

 ¶ 11. Interestingly, Strange does not present any argument in his brief addressing the first prong of the public policy function test; instead, he contends that “even if it is conceded that the actions of ... [the] football coach were discretionary,” there is a fact issue regarding the second prong of the test: whether the conduct involved a social, economic, or political policy.
 
 See Jones,
 
 744 So.2d at 260(¶ 10). This second prong protects:
 

 
 *1191
 
 discretionary actions or decisions based on considerations of public policy. The purpose is to “prevent judicial ‘second guessing’ of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.” The pertinent inquiry, then, is whether the decision “implicates the exercise of a policy judgment of a social, economic, or political nature.”
 

 Dotts,
 
 933 So.2d at 327(¶ 15) (internal citations omitted).
 

 ¶ 12. The question before us, therefore, is whether the District, through its employees, in either allowing students to ride in the back of a pickup truck on school grounds, or ignoring the fact that the students were riding on school grounds in this manner, impacted public policy. We agree with the circuit court that the District’s actions did impact public policy. This Court is mindful that “[ajpplication of the public policy prong of the discretionary function test does not require proof of the thought processes of pertinent decision makers. Rather, the focus is on the nature of the actions taken, and whether they are susceptible to policy analysis.”
 
 Dotts,
 
 933 So.2d at 328(¶ 16) (internal citations omitted). “[Ojnly those functions which by nature are policy decisions, whether made at the operational or planning level, are protected.”
 
 Stewart ex rel. Womack v. City of Jackson,
 
 804 So.2d 1041, 1047(¶ 11) (Miss.2002).
 

 ¶ 13. During the 2009 Regular Session of the Mississippi Legislature, two House bills were introduced that would have made it unlawful for individuals to ride in the back of a pickup truck or in areas where seat belts are not available. House Bill 393 would have made it unlawful for any person under the age of eighteen to ride in a pickup truck bed, and House Bill 1583 would have made it unlawful for any individual to do the same. Both bills died in committee. While this Court is not privy to the thought processes of the legislators on why they did not make this conduct illegal on the public roadways of Mississippi, we recognize that this is the type of social, economic, and political policy the courts are prevented from “second-guessing.” It is no less a policy decision when made by the District. Accordingly, the decision satisfies the second prong of the public policy function test as it involves a policy decision.
 

 ¶ 14. Strange cites the dissent from
 
 Harris v. McCray,
 
 867 So.2d 188, 196(¶ 29) (Miss.2003) (McRae, P.J., dissenting) for the proposition that there is a “third step” in the determination of whether an act is discretionary — whether the act was conducted using ordinary care. However, the Mississippi Supreme Court did not adopt this position in its majority, nor is current case law in this area consistent with the dissent’s propositions. The
 
 Harris
 
 majority ultimately found the school immune from liability where a football player tragically succumbed to heatstroke during practice.
 
 Id.
 
 at 189(¶ 2), 193(¶ 19) (majority opinion). The
 
 Harris
 
 majority differentiated sections ll-46-9(l)(b) and (d), holding that ordinary care was not required in the latter, only the former, and the coach’s actions and duties in coaching his football team were a discretionary act.
 
 Id.
 
 at 189(¶ 4), 193(¶ 18).
 

 ¶ 15. Alternatively, the
 
 Harris
 
 dissent cites
 
 Jones
 
 for the proposition that all of the exemptions to liability under section 11^6-9 require a minimum standard of ordinary care.
 
 Id.
 
 at 196(¶ 29) (McRae, P.J., dissenting). Thus,
 
 Jones
 
 suggests even if a decision is found discretionary according to the public policy function test, because schools have a responsibility to provide a safe environment for its students, “ordinary care must have been used
 
 *1192
 
 before a school can use the statutory shield of immunity.”
 
 Stewart,
 
 804 So.2d at 1049(¶ 20) (quoting
 
 Pearl Pub. Sch. Dist. v. Groner,
 
 784 So.2d 911, 915(¶ 14) (Miss.2001)).
 

 ¶ 16. However, further decisions of the supreme court have expressly rejected this proposition. In
 
 Collins v. Tallahatchie County,
 
 876 So.2d 284, 289(¶ 16) (Miss.2004), the supreme court held that the discretionary duties in section 11-46-9(l)(d) do not contain a duty of ordinary care. Similarly,
 
 Collins
 
 also points out that section ll-46-9(l)(d) exempts governmental entities from liability for discretionary functions, “whether or not the discretion be abused.”
 
 Id.
 
 at 289(¶ 17) (quoting Miss.Code Ann. § ll-46-9(l)(d) (Rev. 2002)). Accordingly, Strange’s argument suggesting a third step to the public policy function test is without merit.
 

 ¶ 17. Strange goes on to make a slightly different argument regarding ordinary care based upon
 
 L.W. v. McComb Separate Municipal School District,
 
 754 So.2d 1136, 1145(¶ 37) (Miss.1999): even if the District’s conduct is discretionary, “there is a ministerial aspect” because state and federal law place a duty of ordinary care on school personnel to minimize risk of personal injury and to provide a safe school environment. Strange asserts there is a genuine issue of material fact about whether the District used ordinary care in its execution or failure to execute Mississippi Code Annotated section 37-9-69 (Rev. 2007), which provides that school personnel must prevent disorderly conduct at school. Strange claims this statute implicates the MTCA’s exemption in section 11-46 — 9(l)(b), which addresses ministerial functions, rather than section 11-46-9(l)(d), which addresses discretionary acts. Specifically, section 11 — 46—9(l)(b) provides that the District would be exempt from liability if it exercised “ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute ... whether or not the statute ... be valid.”
 

 ¶ 18. Strange analogizes the facts of the instant case to
 
 L.W.,
 
 where the supreme court found the school’s act was discretionary in nature, but because of the “ministerial aspects,” the school was not immune.
 
 L.W.,
 
 754 So.2d at 1145(¶37). In
 
 L.W.,
 
 the supreme court found that the discretionary function exemption of 11-46-9(l)(d) did not apply where one student beat and sexually assaulted another student.
 
 Id.
 
 at 1137(¶ 3), 1142(¶ 27). A teacher saw and heard the aggressor-student threaten the victim-student and did nothing.
 
 Id.
 
 at 1137(112). The supreme court found section 37-9-69 applied and that school personnel could have and should have prevented the disorderly conduct at the school.
 
 Id.
 
 at 1142(¶ 25). This eliminated any discretionary function by the school; so the application of the statute made the decision “ministerial,” and the school was not immune.
 
 Id.
 
 at 1142(¶ 27).
 

 ¶ 19. The situation in
 
 L.W.
 
 is distinguishable from the instant case. In
 
 L.W.,
 
 the student threatened an act in front of school personnel that would be considered “disorderly conduct” under section 37-9-69, and the teacher did nothing. Here, while there may be a fact issue regarding whether “surfing” (not just riding) in the back of a pickup truck could be considered “disorderly conduct” within the meaning of the statute, we find this analysis improper. First, there is no evidence that the school’s personnel knew students were committing the behavior at issue, as they did in
 
 L.W.
 
 and merely did nothing about it. If the District personnel had actually seen C.J. surfing in the back of a moving pickup and done nothing to stop it, there may have been a fact issue regarding whether they
 
 *1193
 
 used ordinary care to prevent disorderly conduct under section 37-9-69. Second, C.J. contends he had quit “surfing” in the back of the truck and was walking from the tailgate to the toolbox as the driver rounded a curve. He then fell out of the truck and injured himself. Thus, the proximate cause of his injuries was not the conduct of surfing, but merely the riding in the back of a pickup truck, which cannot be considered “disorderly conduct” within the meaning of section 37-9-69.
 

 ¶ 20. Construing the evidence in the light most favorable to C.J., we find no genuine issue of material fact about whether the District is immune from suit under section 11 — 46—9(l)(d). Accordingly, the circuit court’s grant of summary judgment was proper.
 

 2. Hearing on the Motion for Summary Judgment.
 

 ¶ 21. It is undisputed that no hearing was held on the District’s motion for summary judgment. Strange contends this was error.
 

 ¶ 22. Mississippi Rule of Civil Procedure Rule 78 provides that “[e]ach court shall establish procedures for the prompt dispatch of business.... [and] [t]o expedite its business, the court may make provisions by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition.” Accordingly, the First Circuit Court District of Mississippi has established Rule 4(f), ratified by the supreme court in May 2006, which states that “[a]ll motions shall be decided by the Court without a hearing or oral argument unless otherwise ordered by the Court on its own motion, or, in its discretion, upon written motion made by either counsel.” Therefore, the circuit court was following its own rule in not conducting a hearing on the motion for summary judgment. Furthermore, neither party moved for a hearing.
 

 ¶ 23. Moreover, the Mississippi Supreme Court has held that there is no explicit or implicit right to a hearing under Rule 56(c).
 
 Croke v. Southgate Sewer Dist.,
 
 857 So.2d 774, 777-78(¶10) (Miss.2003). In
 
 Adams v. Cinemark USA, Inc.,
 
 831 So.2d 1156, 1163(¶ 26) (Miss.2002), the supreme court found that, due to the finality of summary judgments, the trial court erred in not granting a hearing on the motion; however, the error was deemed harmless because there was no unresolved issue of material fact. The
 
 Adams
 
 court explained, “Courts generally recognize the advisability of allowing oral argument on summary-judgment motions, but, even the Fifth Circuit Court of Appeals now agrees that the court has the power to order summary judgment without a hearing if it feels that sufficient information is available in the pleadings and the papers in support of and opposition to the motion so that a hearing would be of no utility.”
 
 Id.
 
 at 1165(¶ 30). In
 
 Adams,
 
 no reversible error was found in granting summary judgment without a hearing because it would have merely centered around legal arguments, since the factual arguments were undisputed.
 
 Id.
 
 at (¶¶ 30-31). We find a similar situation here. Any error by the circuit court in not having a hearing is harmless as our review of the record shows there are no genuine issues of material fact present.
 

 ¶ 24. Strange also contends that the circuit court erroneously granted the District’s motion for summary judgment without considering Strange’s response. A time fine of the pertinent procedural events shows that Strange was not timely in his response. The District filed its motion for summary judgment on May 31, 2007. Strange did not respond to the motion within the requisite ten-day time
 
 *1194
 
 frame pursuant to Uniform Rule of Circuit and County Court 4.03(2); so the District filed a letter on June 21, 2007, requesting the circuit court to rule on its motion. The circuit court signed its order in favor of the District that same day, but the order was not filed until June 27, 2007. In the interim, Strange filed a motion for an extension of time on June 21, which was never ruled upon, and filed his response to the District’s motion and itemized facts on June 22, 2007.
 

 ¶ 25. The record does not indicate whether the circuit court judge took Strange’s untimely response into account in making its order. However, the order was not entered until six days after it was signed, and during this time Strange’s response was on file with the circuit court; so the judge certainly could have taken it into account. Since Strange’s response was untimely, the circuit court was not under any obligation to do so. The circuit court’s order denying Strange’s motion for reconsideration did state that the court reviewed all of the briefs by the parties. Further, this case’s de novo standard of review requires this Court to consider all evidence and pleadings contained in the record, and we have done so. Consequently, we find that this argument is without merit.
 

 CONCLUSION
 

 ¶ 26. Based on the foregoing, the circuit court did not err in granting summary judgment in favor of the District. Furthermore, we find no reversible error regarding the lack of a hearing on the motion for summary judgment. Therefore, we affirm the circuit court’s judgment.
 

 ¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF ITAWAMBA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . The record indicates this order was dated and stamped "processed” in the circuit court on June 21, 2007.
 

 [2]
 

 . Mississippi Code Annotated section 63-2-1 (Supp.2008) requires every operator, front seat passenger and child under seven (7) years of age who is not required to be protected by a child passenger restrain device to wear a seal belt. Accordingly, it would appear to be a violation for a child under seven years old to ride in the back of a pickup truck pursuant to this statute. C.J., however, was not within this age range.