MAXWELL, J.,
for the Court:
¶ 1. Under the Mississippi Tort Claims Act (MTCA), governmental entities such as public school districts are immune from liability based on the exercise of a discretionary function. Parents J.S. and L.S. sued the Lamar County School District (District) based on neck injuries allegedly sustained by their daughter A.S. (“Amy”)[1] in a car wreck in the parking lot of Oak Grove High School. The complaint alleged the District was negligent because it failed to maintain reasonable control of the vehicles in the parking lot and safe traffic conditions on campus. Because we find the District’s allegedly negligent actions were discretionary functions entitled to immunity, we affirm the grant of summary judgment in favor of the District.
BACKGROUND
¶ 2. On February 6, 2008, Amy was leaving Oak Grove High School. She was riding in the back seat of her brother’s GM Sierra. Her brother was stopped in campus traffic when another driver, N.C. (“Nicky”), ran into the back of the truck. Apparently Nicky was not paying attention, distracted by either texting or talking on her cell phone. Amy alleges she suffered multiple injuries due to the wreck, requiring a cervical fusion and limiting her mobility.
¶3. Amy’s parents, individually and on her behalf, sued the District, claiming the District was negligent because it: (1) failed to maintain and provide a safe parking lot, (2) failed to maintain safe traffic conditions for the vehicles in the parking area, (3) failed to maintain reasonable control of the vehicles in the area, (4) failed to provide for the safety of Amy, as directed by Mississippi law, and (5) failed to follow its own policy and procedure and relevant Mississippi statutes. Amy[2] argues the District had knowledge there was a traffic-flow problem and should have taken preventative measures. Amy relies on the high number of reported fender-benders in the Oak Grove parking lot the year before her wreck. (In one day, three separate incidents were reported.)
¶ 4. The District responded that it is the role of its police department to determine how best to control traffic. And this decision, the District asserted, is a discretionary function immune from liability under the MTCA. On this basis, the District moved for summary judgment. Alternatively, the District argued Amy failed to present a negligence claim sufficient to survive summary judgment.
¶ 5. The Lamar County Circuit Court granted summary judgment in the Dis *1250 trict’s favor because it found the District was immune from suit under Mississippi Code Annotated section ll-46-9(l)(d) (Supp.2011). The court also found there was no genuine issue of material fact because the District had done everything it could to ensure the students’ safety.
¶ 6. Amy timely appealed. See M.R.A.P. 4(a).
DISCUSSION
¶ 7. Immunity is a question of law, which we review de novo. Simpson County v. McElroy, 82 So.3d 621, 623 (¶ 9) (Miss.Ct.App.2011) (citing Dancy v. E. Miss. State Hosp., 944 So.2d 10, 15 (¶ 16) (Miss.2006); Madison HMA, Inc. v. St. Dominic-Jackson Mem’l Hosp., 35 So.3d 1209, 1215 (¶ 17) (Miss.2010)). Mississippi Code Annotated section ll-46-9(l)(d) provides immunity to governmental entities, such as school districts,[3] from claims “based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.”
¶ 8. “So long as the employee was performing a discretionary function, the government is immune, even if the employee abused his discretion.” McElroy, 82 So.3d at 625 (¶ 18) (citing Barrentine v. Miss. Dep’t of Transp., 913 So.2d 391, 394 (¶ 12) (Miss.Ct.App.2005); Collins v. Tallahatchie County, 876 So.2d 284, 289 (¶ 17) (Miss.2004)). Recently, the Mississippi Supreme Court expressly overruled previous cases that had interpreted section 11-46 — 9(l)(d) in conjunction with section 11-46 — 9(l)(b)[4] to find that, if a duty fell within a statute, the governmental entity had to exercise ordinary care in order to be immune from suit. Miss. Transp. Comm’n v. Montgomery, 80 So.3d 789, 797 (¶ 26) (Miss.2012) (overruling Miss. Dep’t of Transp. v. Cargile, 847 So.2d 258 (Miss.2003); Brewer v. Burdette, 768 So.2d 920 (Miss.2000); L.W. v. McComb Separate Mun. Sch. Dist., 754 So.2d 1136 (Miss.1999)); see also McElroy, 82 So.3d at 624 (¶ 15) (citing Shelly Mott Diaz & Robert A. Weems, Exempt or Not Exempt: Clarifying the Confusion Surrounding the Relationship Between the Discretionary Function Exemption and the Performance of Statute Exemption in the Mississippi Tort Claims Act, 80 Miss. L.J. 45 (2010)) (discussing the proper application of section 11^16-9(l)(b)). The supreme court clarified “in determining whether a governmental entity is exempt from liability under [s]ection 11 — 46—9(l)(d), the two-part public-function test ... must be used.” Montgomery, 80 So.3d at 797 (¶ 26).
¶ 9. Amy relies on two statutes[5] — Mississippi Code Annotated section 37-7- *1251 301(c)-(d) (Supp.2011) and Mississippi Code Annotated section 37-9-69 (Supp. 2011)—and cases that applied them to argue the District was not entitled to discretionary-function immunity. E.g., Lang v. Bay St. Louis/Waveland Sch. Dist, 764 So.2d 1234, 1241 (¶¶ 30-33) (Miss.1999) (applying section 37—7—301(c)—(d)); L.W., 754 So.2d at 1141-42 (¶ 25) (applying section 37-9-69). But the cases Amy cites employ the very reasoning the supreme court overruled in Montgomery. In L.W., the supreme court had found “L.W.’s allegations do in fact involve discretionary conduct rather than ministerial.” L.W., 754 So.2d at 1141 (¶ 23). But the supreme court held the school district was not entitled to discretionary-function immunity under section 11—46—9(l)(d) because its actions also fell within the duties of section 37-9-69, and section 11—46—9(l)(b) imposed a duty of ordinary care on statutory duties. Id. at 1141-42 (¶¶ 24-25), overruled by Montgomery, 80 So.3d at 797 (¶ 26). Similarly in Lang, the supreme court held activities that fell within section 37-7-301(c)-(d) were not afforded discretionary immunity because section ll-46-9(l)(b) imposed a duty of ordinary care on statutory duties. Lang, 764 So.2d at 1241 (¶ 31).
¶ 10. Contrary to Amy’s assertions, our task is not to simply ask whether the District’s allegedly negligent activities fall within broad statutory duties. Instead, we employ the two-part public-function test. Montgomery, 80 So.3d at 797 (¶ 26). Under this test, we first determine “whether the activity in question involved an element of choice or judgment.” Id. at 795 (¶ 20). If so, we must also determine “whether that choice or judgment involved social, economic, or political-policy considerations.” Id. If the activity meets both prongs of the test, the governmental entity is immune from suit.
I. Choice or Judgment
¶ 11. The “activity in question,” broadly described, is the District’s oversight of the Oak Grove parking lot as students were leaving school. We find this activity is discretionary, not ministerial, and thus meets prong one of the public-function test.
¶ 12. In Montgomery, the Mississippi Supreme Court reiterated that “[t]he method of determining whether an act is discretionary or ministerial has been clearly established.” Id. at (¶ 19) (citing Dancy, 944 So.2d at 16-17). “A duty is discretionary when it is not imposed by law and depends upon the judgment or choice of the government entity or its employee.” Id. (citing Miss. Dep’t of Mental Health v. Hall, 936 So.2d 917, 924-25 (¶ 17) (Miss.2006)). In contrast, “[a] duty is ministerial if it is positively imposed by law and required to be performed at a specific time and place, removing an officer’s or entity’s choice or judgment.” Id. (citing Covington County Sch. Dist. v. Magee, 29 So.3d 1, 5 (¶ 8) (Miss.2010)).
¶ 13. There is no statute directing how a school district is to direct and control traffic on its campuses. How traffic flowed, where students could park, and where speed bumps were placed all involved choice or judgment. See id. And despite her allegations, Amy has not shown any District policy or procedure the District failed to follow that led to her injury.
¶ 14. Section 37-9-69 does require public “superintendents, principals and teachers [to] hold the pupils to strict account for disorderly conduct at school, on the way to and from school, on the playgrounds, and during recess.” But in Magee, the supreme court acknowledged section 37-9-69 has been applied to find ministerial duties “only in a limited context, mainly in cases concerning the disorderly conduct of stu *1252 dents, or intentional acts on the part of individuals[.]” Magee, 29 So.3d at 5 (¶ 10). One of those cases was Lang, which involved a student being injured when he fell from a seven-foot brick wall — a wall that the school knew students were prone to climb — while trying to avoid a fight between students. Lang, 764 So.2d at 1235 (¶ 2). The supreme court held “Lang’s allegation that the school district failed to provide ‘necessary supervision’ for her son does not fall under this discretionary exception” because the school had a ministerial “duty to control and discipline students];.]” Id. at 1241 (¶ 29).
¶ 15. In contrast, Magee was a wrongful-death suit involving a student who died of a heat stroke during August football practice. Magee, 29 So.3d at 2-3 (¶¶ 2-3). The supreme court held section 37-9-69 “has never applied ... to the timing or oversight of football practice.” Magee, 29 So.3d at 5 (¶ 10). Instead, a school district’s “decision to allow coaches the ability to set and conduct practices” is a discretionary action. Id. at 8 (¶ 14) (citing Harris v. McCray, 867 So.2d 188, 192-93 (¶¶ 16-17) (Miss.2003)). Similarly, in Strange v. Itawamba County School District, 9 So.3d 1187, 1190-91 (¶¶ 6-13) (Miss.Ct.App.2009), this court found allowing students to ride to football practice in the back of a pickup truck was an exercise of a discretionary function. Strange had argued section 37-9-69 applied because there was a fact issue whether the student was engaged in disorderly conduct — “surfing” in the back of the pickup — when he fell. Strange, 9 So.3d at 1192 (¶ 18). Because Strange had admitted “he had quit ‘surfing’ in the back of the truck ... then fell out of the truck and injured himself,” this court found “the proximate cause of his injuries was not the conduct of surfing, but merely the riding in the back of a pickup truck, which cannot be considered ‘disorderly conduct’ within the meaning of section 37-9-69.” Strange, 9 So.3d at 1192-93 (¶ 19).
¶ 16. In this case, Nicky’s actions — not paying attention while driving through the school parking lot — was not the same type of “disorderly conduct” that triggered ministerial duties in Lang. In Lang, there were allegations that had the school properly supervised the students, Lang would not have been on top of a seven-foot wall and would have not have scrambled from the wall to avoid a fight. Here, both Nicky and Amy were participating in a permissible on-campus activity — leaving campus in a student-driven vehicle. While there is evidence the District was aware that fender benders were occurring in the campus parking lot, there is no evidence the District knew Nicky was a careless driver or that they witnessed her driving erratically and failed to intervene. Thus, we do not find the District’s activities fall within the “limited context” of ministerial duties imposed by section 37-9-69. Ma-gee, 29 So.3d at 5 (¶ 10); see also Q.A. ex rel. D.W. v. Pearl Pub. Sch. Dish, 87 So.3d 1073, 1078-79 (¶¶ 14-16) (Miss.Ct.App.2011) (rejecting the application of section 37-9-69 to a claim the school district failed to monitor its parking lot while students left after-school activities).
¶ 17. Likewise, we do not find section 37-7-301 imposed ministerial duties on the District. Section 37-7-301(c)-(d) does impose a positive duty on public school boards “[t]o be the custodians of real and personal school property and to manage, control and care for same, both during the school term and during vacation” and “[t]o have responsibility for the erection, repairing and equipping of school facilities and the making of necessary school improvements!.]” But this statute does not specify the time, manner, or conditions in which school parking lots must be controlled. See Magee, 29 So.3d at 5 *1253 (¶ 8) (describing an act as ministerial if “its performance [is] required at a time and in a manner or under conditions which are specifically designated”).
¶ 18. Instead, we find the District was left to use its judgment on how best to monitor the parking lot, direct traffic, and regulate student drivers. See id. (“A duty is discretionary if it requires the official to use her own judgment and discretion in the performance thereof.”). Thus, we find the District’s allegedly negligent activities were discretionary, not ministerial.
II. Social, Economic, or Public Policy
¶ 19. The second part of the public-function test limits the scope of discretionary-function immunity to “only those functions which by nature are policy decisions, whether made at the operational or planning level[.]” Dancy, 944 So.2d at 16 (¶ 17) (citation omitted). “The purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.” Id.
¶ 20. The supreme court in Magee held “[t]he District’s discretionary decision to allow coaches the ability to set and conduct practices is rooted in policy [because] coaches know their players and must be able to control their teams.” Magee, 29 So.3d at 8 (¶ 14). This court in Strange found the decision to allow students to ride to and from football practice in the back of a pickup truck was a policy decision. Citing the Legislature’s recent rejection of a bill that would outlaw riding in the back of a pickup, this court found “[i]t is no less a policy decision when made by the District” versus the Legislature. Strange, 9 So.3d at 1191 (¶ 13). And in Q.A., this court held the decision not to monitor the school parking lot when students left after-school activities was grounded in policy because it involved decisions about how best to staff and fund after-school activities and allocate the school’s resources. Q.A., 87 So.3d at 1078 (¶ 13).
¶ 21. Here, the decision to allow students to drive to school involves economic and public policy. By allowing students to transport themselves to school, the District does not have to pay to bus these students to school but does have to pay to maintain a parking lot. Further, this decision also enables students the freedom to work or attend church or another civic function after school, without having to wait on a bus to take them home. See Kazanjian v. Sch. Bd. of Palm Beach County, 967 So.2d 259, 268 (Fla.Dist.Ct.App.2007) (citations omitted) (finding that, because “[a] high school may have sound educational reasons for wanting to treat its students with the dignity which comes with freedom of movement,” the school district’s “discretionary planning level policies regarding parking permits, student parking,' and ... parking rules” were immune from suit).
¶ 22. For example, the District does not allow ninth graders to drive to school, even if they have a valid driver’s license. That is a policy decision. To completely prevent on-campus car wrecks — to guarantee no students are injured by other student drivers’ negligence — the District would have to ban student drivers. Because its decision to allow student drivers, like Nicky, is within its discretion, and because the control of student drivers involves economic and public policy, we find the District’s activities met both prongs of the public-function test and were entitled to immunity under section ll-46-9(l)(d).
¶ 23. Because we find the District is immune, we need not address the circuit court’s alternate finding that Amy failed to create a factual dispute over the District’s *1254 negligence. Thus, we affirm the grant of summary judgment in the District’s favor.
¶ 24. THE JUDGMENT OF THE LAMAR COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, RUSSELL AND FAIR, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.

. The plaintiffs filed this case confidentially, using only the initials of the individuals involved. For readability, we use substitute names throughout this opinion.

. We refer to the plaintiffs collectively as “Amy."

. See Miss.Code Ann. § 11-46-1 (g) (Supp.2011) (defining "governmental entity”); see also L.W. v. McComb Separate Mun. Sch. Dist., 754 So.2d 1136, 1139 (¶ 12) (Miss.1999) (expressly finding school district is a "governmental entity” for purposes of the MTCA), overruled on other grounds by Miss. Transp. Comm’n v. Montgomery, 80 So.3d 789, 797 (¶ 26) (Miss.2012).

. Mississippi Code Annotated section 11-46-9(l)(b) (Supp.2011) provides immunity against claims:
Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid[.]

.Amy also cites a third statute, Mississippi Code Annotated section 37-13-91 (Supp. 2011), which requires compulsory school attendance. But we do not find the duties imposed on the superintendent to report absenteeism is relevant to Amy’s allegations of negligence. See Miss.Code Ann. § 37 — 13— 91(6), (8).