CARLTON, J.,
Dissenting.
¶ 26. Because I would reverse the summary judgment and remand this case for further proceedings, I respectfully dissent. In order to make my position clear, I will address whether this case presents a breach of ministerial or discretionary duty, and whether the Mississippi Tort Claims Act (MTCA) bars liability in this case. I will also address the issues of proximate cause and foreseeability.
I. Whether the MTCA bars AJB.’s claims against the school district.
¶ 27. Under Mississippi Code Annotated section ll-46-9(l)(d) (Supp.2008), a governmental entity and its employees acting within the scope and course of their employment enjoy immunity from suit for any claim “[biased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.” A duty is discretionary when the employee must use his own judgment or discretion in the performance of that duty. Harris ex rel. Harris v. McCray, 867 So.2d 188, 191(1112) (Miss. 2003) (finding that actions of high school coaches were discretionary in nature in assessing injuries of football players and the need for medical attention). No immunity exists under the MTCA for the breach of a ministerial duty performed by the governmental employee. After reviewing Mississippi case law, statutory law, and administrative law, I find it obvious that the duty of the school district and the school bus driver to safely unload students from the bus upon arrival at the school is a ministerial duty, not a discretionary duty.[3] The duty of the school district and bus driver to disembark the children safely upon completion of the bus route and arrival at school requires no discretion on the part of the bus driver or the school district.
¶ 28. Mississippi has recognized the duties of school districts to protect and safeguard children entrusted to the school district’s care while the student is a “user” of the bus. See Walley v. Coregis Ins. Co., 822 So.2d 902, 910(¶ 43) (Miss.2002) (quoting Johnson ex rel. Blocket v. U.S. Fid. & Guar. Ins. Co., 726 So.2d 167, 168(¶3) (Miss.1998)). The Walley court dealt with determining what activities fell within the definition of “use” of a school bus in addressing whether children injured while waiting for the school bus to arrive were covered under the school district’s under-insured motorist insurance policy. Id. at 905(¶ 17), 910(1143). Analyzing the facts of this case under the “use” analysis in Wal-ley, I submit that when A.B. boarded the bus for school, she clearly satisfied the “use” requirement. A.B.’s use of the school bus for transportation to school placed her within the zone of protection created by the school district. See id. at 907(¶ 29).
*802 ¶ 29. The supreme court in Walley, after examining case law from other jurisdictions, determined that the use of a school bus includes not only the transportation of students to and from school, but it also includes unloading the school bus and assuring that the students reach a safe place, including when they cross a street. Id. at 909(¶ 38) (citing State Farm Mut. Auto. Ins. Co. v. Kentucky Sch. Bd. Ins. Trust, 851 F.Supp. 835, 838 (E.D.Ky.1994)).
¶ 30. The Walley court’s recognition of the school district’s duty to protect students who use the bus is further supported by Mississippi statutory law and administrative regulations issued by the Mississippi Department of Education. The general statutory scheme for transportation of students is set forth in Mississippi Code Annotated sections 37-41-1 to -57 (Rev.2007). See Miss.Code Ann. § 37-41^49 (making it a misdemeanor for a school bus driver to violate the safety regulation established by the board of education); Miss.Code Ann. § 37-41-25 (false reporting by school bus driver, or other employee of district, of the number of children being transported to and from school shall be a misdemeanor); Miss.Code Ann. § 37-151-107 (Rev.2007) (misdemeanor to misrepresent the average number of children in attendance); Miss. Code Ann. § 63-3-103(e) (Rev.2004) (defining school bus and requiring plain markings).
¶ 31. Mississippi Code Annotated section 37-41-1 provides that the State Board of Education is authorized to set standards for public school bus routes, school buses, school bus drivers, and for formulating courses of training for public school bus drivers. Further, Mississippi Code Annotated section 37-11-29 (Rev.2007) mandates that school employees must report any unlawful activity on educational property or during a school-related activity. The statute explains that school property includes school buses and the school campus.
¶ 32. Mississippi Code Annotated section 37-9-69 (Rev.2007) provides the following regarding school officials’ handling of student behavior:
It shall be the duty of each superintendent, principal and teacher in the public schools of this state to enforce in the schools the courses of study prescribed by law or by the state board of education, to comply with the law in distribution and use of free textbooks, and to observe and enforce the statutes, rules and regulations prescribed for the operation of schools. Such superintendents, principals and teachers shall hold the pupils to strict account for disorderly conduct at school, on the way to and from school, on the playgrounds, and during recess.
In recognizing a school district’s duty to provide a safe environment, this Court in Doe ex rel. Doe v. Wright Security Services, Inc., 950 So.2d 1076, 1086(¶43) (Miss.Ct.App.2007) reversed a grant of summary judgment in favor of a security service in a student’s action involving her being sexually assaulted by another student. This Court found summary judgment inappropriate because the security service had contracted with the student’s school district to provide security services; thus, it had obligated itself to a duty to protect the student. Id. at 1080(¶ 15). Further, this Court found that public schools had the statutory duty to minimize the risks to students and to provide a safe environment. Id.
¶ 33. Since the statutes cited above place the responsibility on the State Board of Education to set standards for school bus drivers, routes, and the like, we must review the Mississippi Department of Education’s Board of Education Policy Manual. Section 7904 of the manual sets forth the *803 basic job description and responsibilities of public school bus drivers. Miss. Reg. 36-000-001 § 7904 (Rev.1993) (Weil). The school bus drivers must abide by all laws and school board safety regulations. Id. Among other duties, the school bus drivers must also maintain routes and schedules as planned by the local school board. Id. at (6). The school bus drivers must also maintain discipline on the school bus and complete reports on discipline problems. Id. at (9), (11). Section 7906 of the policy manual states that “[t]he school bus driver is the most important element in the safe transportation of students.”
¶ 34. Further examining the Department of Education Policy Manual, I turn to the Instructor’s Guide for Training School Bus Drivers. Miss. Reg. 36-000-083. This administrative regulation explains that the purpose of the guide is to ensure that school-bus-driver training is consistent throughout the state. Id. at § 2. The manual explains that as a school bus driver employed by the Mississippi Department of Education, the school bus driver serves at the discretion of the State Superintendent of Education. Id. at § 3. Encompassed in the school bus drivers’ responsibilities are the requirements to conduct a pre-trip and post-trip inspections and to complete all reports on bus discipline. Id. The regulations also specify that the driver must never permit a pupil to leave the bus without proper authorization before arriving at school or home, and the driver cannot drive the bus off the regular route or for unauthorized purposes. Id. at § 10. The regulations pertaining to educational accountability explain that school buses will transport students to them school of instruction prior to the beginning of classes.
¶ 35. A review of the statutory law, administrative regulations, and case law shows that a school district and its school bus driver have a duty to safely transport students to school. The duty to safely transport includes the safe loading and unloading of students. The school bus driver possesses no discretion to deviate from a route or to allow students to depart the bus at unauthorized locations. Id. Inherent in these minimum requirements of a school bus driver is a requirement to unload the students upon arriving at the school of instruction before classes begin.
¶ 36. Therefore, I would reverse and remand this case, as I find that a question of material fact exists as to the breach of the ministerial duty to unload students safely at the school upon arrival. The school district’s answer to the complaint, as well as arguments in support of its motion for summary judgment, assert that the school bus driver exceeded the course and scope of his duties when he told A.B. to remain on the school bus instead of exiting at the high school and then hid her from school officials as he transferred her to his private vehicle from the school bus. Therefore, the school district does not dispute that A.B. remained on the bus after the bus’s arrival at school, indicating a breach of the school bus driver’s duty to safely unload students. The school district’s answer and arguments, therefore, inherently admit that the school bus driver possessed no discretion to choose to keep a child on the bus upon arrival at his destination.
¶ 37. As stated, I find that this case presents a question of a breach of a ministerial duty, not a discretionary duty. Immunity exists for breaches of discretionary duties, even whex-e the discretion is abused. Miss.Code Ann. § 11 — 46—9(l)(d). However, no such immunity exists for breaches of ministei’ial duties. This distinction is at the crux of the flaw in the school district’s argument. The school district argues that immunity exists for mis *804 conduct of its employees if that misconduct occurred in the course and scope of employment. The school district further argues that the governmental entity is not liable for any misconduct of its employees which occurred outside the course and scope of employment, such as a criminal offense. In this case, the school bus driver possessed a duty to safeguard the students who use the bus, including ensuring their safe disembarkment upon arrival at the destination. The school bus driver breached that ministerial duty by telling A.B. to remain on the bus while the driver was in the performance of his duties as a school bus driver.
II. Whether A.B.’s injury was foreseeable.
¶ 38. The supreme court in Glover ex rel. Glover v. Jackson State University, 968 So.2d 1267, 1276(¶ 29) (Miss.2007) succinctly stated that “[n]o citation of authority is necessary for the proposition that, to recover for injuries in a negligence claim, a plaintiff must prove that the defendant was negligent, and that such negligence was the proximate cause, or a proximate contributory cause, of the injuries.” The supreme court also found that “[njegli-gence is doing what a reasonable, prudent person would not do, or failing to do what a reasonable, prudent person would do, under substantially similar circumstances.” Id. at 1277(¶ 29). The Glover court concluded its definition of negligence noting that its definition “obscures the complexity of the concept of proximate cause.” Id. The court noted that “[a] defendant’s negligence is the cause in fact of a plaintiffs damage where the fact[-]finder concludes that, but for the defendant’s negligence, the injury would not have occurred.” Id. at (¶ 32) (footnote omitted). Where harm is caused by more than one tortfeasor, the test is whether a particular tortfeasor’s negligence “was a substantial factor in bringing about the resulting harm.” Id. at n. 11 (citing Dan B. Dobbs, The Law of Torts, § 171 at 415 (2000)).
¶ 39. The Glover court then set out an instructive analysis of negligence, proximate cause, and foreseeability. The Glover court examined the prior precedent of City of Jackson v. Estate of Stewart ex. rel. Womack, 908 So.2d 703 (Miss.2005), where a bus driver assisted an elderly woman off the bus at a day-care center, then turned to help another passenger exit the bus. The elderly woman fell in the parking lot, hitting her head on the pavement, and then days later suffered a stroke. Womack, 908 So.2d at 706-07 (¶¶ 7-13). As a result of the stroke, the elderly woman suffered other medical complications. Id. at (¶¶ 11-13). The supreme court held in Womack that a stroke is not the type of injury one could anticipate resulting from a fall; thus, damages related to the stroke and its consequences would not be recoverable. Id. at 715(¶ 63).
¶ 40. The Glover court reiterated that “in satisfying the requirement of foreseeability, a plaintiff is not required to prove that the exact injury sustained by the plaintiff was foreseeable; rather, it is enough to show that the plaintiffs injuries and damages fall within a particular kind or class of injury or harm which reasonably could be expected to flow from the defendant’s negligence.” Glover, 968 So.2d at 1278(¶ 37).
¶ 41. The Glover case dealt with the rape of a female student attending a youth sports program at Jackson State University (JSU). A week prior to the assault, the program’s bus driver had been informed that a girl was in the boys’ restroom. Id. at 1271(¶ 6). The driver found Glover and another female student outside the boys’ restroom, but they denied having been in the boys’ restroom. Id. The driver con *805 ducted no further investigation into the incident, even though the boy who had reported the incident continued to insist that the girls had been in the boys’ restroom. Id. One boy later testified that he had been in the restroom on that occasion having sex with Glover. Id.
¶ 42. The next week, the bus driver picked up the children for the program and then dropped them off at the wrong building. Id. at (¶ 8). Upon learning that he had dropped the children off at the wrong location, the bus driver told the students to get back on the bus. Id. The driver did not notice that Glover and two male students failed to get back on the bus. Id. The driver left the three students behind, unattended and unsupervised. Id. Shortly thereafter, the two male students allegedly took Glover into a building and raped her. Id.
¶ 43. In Glover, the bus driver knew the male students who raped Glover had violent tendencies and that JSU had a history of dime on campus. Id- at (¶ 7). The Glover court noted that an employee’s knowledge was imputed to the employer. Id. at 1276 n. 9. The court further stated that a fact-finder could find that JSU failed to provide adequate supervision and security on its premises. Id. at 1279(¶ 41). The court also found that a reasonable fact-finder could conclude that because of the inadequate security and supervision, JSU officials should have foreseen that some harm could come to Glover, including sexual activity and/or violence. Id. The Glover court noted that our law required only that the defendant foresee that some violent act or impermissible sexual act might occur. Id. The defendants did not have to foresee the particular violent or sexual act perpetrated against Glover. Id.
¶ 44. In Glover, the supreme court stated that when viewed in the light most favorable to Glover’s case, the facts could lead a reasonable juror to find that Glover’s injuries and damages were a foreseeable consequence of JSU’s negligence. Id. at (¶ 42). Therefore, the supreme court found summary judgment inappropriate. Id. The court further explained that JSU’s argument that the rape was an intervening superceding cause of Glover’s damages had no merit. Id. The court stated that precedent clearly established that where the intervening cause of the injury was foreseeable, it cannot supercede the liability of the defendant. Id.
¶ 45. In this case, the school district makes much of A.B.’s behavior of habitually skipping school. The school district states that A.B., a ninth grader at the time, would ride her assigned bus, which was driven by the school bus driver at issue here. ■ She would exit the bus at the appropriate time, and then she would leave campus without entering the school. The school district asserts that, on other occasions, A.B. would attend some of her morning classes, and then she would leave campus for the day.
¶ 46. The school district also asserts that A.B. would spend time with her boyfriend or a female friend while skipping school, and that she had, on multiple occasions, engaged in sexual intercourse with her boyfriend. However, the school district does not allege that A.B.’s other sexual encounters occurred on the school bus, while entering or exiting the school bus, or were in any way connected with her use of the school bus or the failure of the school bus driver to unload her at the school. I fail to see how A.B.’s delinquent conduct, unrelated to use of the school bus, absolves the school district’s duty to provide a safe zone for children using the school bus and to protect the students until their use of the school bus is completed.
¶ 47. The arguments pertaining to the delinquent conduct and sexual activity of *806 A.B., on other occasions and unrelated to her use of the school bus, simply throw a smoke screen on a determination of whether the school district and its employee breached a ministerial duty to unload the students safely. The failure of the school district to report the delinquent and truant conduct, however, possibly violates the school’s requirement to control unlawful activity on school property, including school buses, as set forth in Mississippi Code Annotated section 37-11-29. The fact remains, nonetheless, that the school district does not dispute that the school bus driver told A.B. to stay on the school bus upon arriving at the school. These past delinquent acts of A.B. could perhaps also be probative of the school district’s failure to provide adequate truancy reporting and of the foreseeability that delinquent acts, sexual activity, or injury could occur if A.B. remained on the school bus in order to skip school.
¶ 48. The parties do not dispute that A.B. was a student and under the age of sixteen at all relevant times. She was not of legal age to consent to sexual activity. Any alleged past delinquent conduct or sexual activity with others did not provide the school bus driver with the discretion or authority to choose to not disembark her from the school bus upon arrival at the school. See M.R.E. 404(a) (generally, “[ejvidence of a person’s character or a trait of his character is not admissible for the purpose of showing that a person acted in conformity therewith on a particular occasion”); see also Wilkins v. State, 603 So.2d 309, 323 (Miss.1992) (In addressing proper impeachment evidence, the court found that a witness cannot be cross-examined regarding his involvement with crimes for which he had not been convicted or impeached with questions regarding crimes for which he has been charged.) School districts possess a duty to protect all students using the school bus and such safe use includes loading, unloading, and arrival at school. See Walley, 822 So.2d at 909(¶ 38) (quoting Kentucky Sch. Bd. Ins. Trust, 851 F.Supp. at 838); see also Miss. Code Ann. § 37-9-69.

. See Miss. Dep't of Human Servs. v. S.W., 974 So.2d 253, 258-59(¶ 11) (Miss.Ct.App.2007) (explaining distinction between ministerial and discretionary duties).